**In re Philip ROBERTSON, Debtor.**

**Bankruptcy No. 391–35663 RCM–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Feb. 28, 1992.

William E. Bailey, Philip Robertson, Dallas, Tex., for debtor.

James R. Turton, Sp. Asst. U.S. Atty., Dallas, Tex., for I.R.S.

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION TO DISMISS

ROBERT McGUIRE, Chief Judge.

On January 23, 1992, came on to be heard the confirmation of the Modified Chapter 13 Plan filed by Philip Robertson ("Debtor"). The Internal Revenue Service (the "IRS"), an unsecured creditor, interposed an objection to the Plan's treatment of its claim, principally on the grounds that Debtor is not eligible for relief under Chapter 13. Pursuant to 11 U.S.C. § 109(e), only an individual with unsecured debts of less than $100,000 is eligible to be a debtor under Chapter 13. The IRS had filed a proof of claim in this case in the amount of $877,305 as an unsecured claim.

Contemporaneously, Debtor filed and had heard Debtor's Response to United States' Objections to Jurisdiction Under Section 109(e) of the Bankruptcy Code (the "Response"), claiming that the $877,305 tax penalties assessed by the IRS under 26 U.S.C.A. §§ 6700 and 6701 are contingent as a matter of law, and not counted for purposes of the debt limitations under § 109(e) of the Bankruptcy Code. Debtor filed an affidavit in support of the Response and offered it at the hearing. The IRS offered no controverting affidavit.

Alternatively, Debtor has moved the Court for an order to convert the Chapter 13 case to a Chapter 11 proceeding in the event that the Court should rule that such tax penalties are "noncontingent" and "liquidated".

The Court, after reviewing the affidavit, the motions, and other pleadings, determines that Debtor is eligible for relief under Chapter 13, in that his unsecured debts are less than $100,000. The Court orders Debtor to commence an adversary proceeding pursuant to § 505 of the Bankruptcy Code, so that the amount and legality of the IRS' tax penalties may be determined

for purposes of determining the feasibility of Debtor's Chapter 13 Modified Plan. The confirmation hearing on Debtor's plan is to be continued until such time as the tax liability issue is determined. The following are the Court's findings of fact and conclusions of law from such hearing.

### Background Facts

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1334, and may enter a final order with respect thereto. This matter constitutes a core proceeding under 28 U.S.C.A. § 157(b)(2)(A), (B), and (O).

2. On July 24, 1991, Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Debtor formerly was a partner in Bailey Vaught Robertson & Co., a general partnership engaged in public practice as public accountants ("BVR").

3. Beginning in 1982, BVR began representing certain partnership clients which contracted with an entity known as Coral concerning medical research and development contract services. In connection with BVR's representation of its partnership clients, the Texas law firm of Durant & Mankoff published a legal opinion in 1982, which provided legal authorities entitling companies who contracted with Coral to claim deductions for research and development expenses associated with that contract. (Debtor's Affidavit, ¶¶ 13 and 14, p. 4).

4. Coral's stated purpose was to produce monoclonal antibodies ("MABs"). MABs are laboratory copies of antibodies found in humans and certain animals. When linked to enzymes, the resultant MAB conjugates can be used to detect disease-causing organisms. Between 1982 and 1985, Coral entered into 202 contracts to produce specified MAB conjugates for diagnostic use. The contracts produced only negligible royalties; only five MABs showed commercial promise.

5. The Coral interests were marketed as tax shelters. Coral contracts were sold in Brazilian currency, the cruzeiro, and the tax shelter was keyed to the currency's expected continued downward plunge. Coral contracts sold for the equivalent of $600,000 in U.S. currency, with a one-eighth cash down payment of $75,000 and a promissory note for the cruzeiro equivalent of the remaining $525,000. The note was payable in four installments commencing seven years after execution, and provided that any royalties from the project were to be used as prepayments. Interest was set at ten percent. The notes contained no mechanism for monetary correction as the cruzeiro markedly changed in value.

6. The Brazilian cruzeiro was a rapidly depreciating currency in 1982. According to data furnished as part of the Coral offering materials, one U.S. dollar could be exchanged for 4.950 cruzeiros in 1970. By June 1982, the exchange rate had risen to $1 U.S. for 173 cruzeiros. Because of the currency's precipitous devaluation, and the lack of a monetary correction factor or an inflationary index in the promissory notes, investors could expect to pay only a small fraction of the $525,000 notes. By 1988, the cruzeiros that cost $525,000 in 1982 could be paid to Coral for approximately $184.

7. The IRS disallowed a portion of the deductions taken by the partnerships on 1982–83 tax returns for payments, expenses, and debt incurred in connection with Coral research contracts on the grounds that the debt represented by the research notes was illusory, and the partnerships did not contract with Coral pursuant to a bona fide profit motive. *Agro Science Co. v. C.I.R.*, 934 F.2d 573 (5th Cir.1991); *United States v. Campbell*, 897 F.2d 1317 (5th Cir.1990). Citing several tax court decisions, the Fifth Circuit held that there is no material difference between the partnerships' sham research debt, and the sham interest payments disallowed in other cases. *See, Levin v. Commissioner*, 87 T.C. 698, 734 (1986), *aff'd*, 832 F.2d 403 (7th Cir.1987) (interest accrued on sham long-term obligations payable in foreign currency undergoing inflation not deductible).

8. Prior to the Debtor's filing of his Chapter 13 petition, no taxes and/or civil tax

penalties had been assessed against him by the IRS.

9. On July 31, 1991, *subsequent to the time that Debtor filed his Chapter 13 petition*, and other partners in BVR had similarly filed Chapter 13 petitions, the IRS made an assessment against BVR in the total amount of $695,402, consisting of alleged civil tax penalties under 26 U.S.C.A. § 6700 of the Tax Code in the amount of $153,402, and alleged civil penalties under 26 U.S.C.A. § 6701 of the Tax Code in the amount of $542,000 (collectively referred to as the "BVR civil tax penalty assessment of $695,402"). The penalties were assessed for the promotion of abusive tax shelters, and aiding and abetting in the understatement of tax liabilities. On August 1, 1991, the IRS filed a federal tax lien against BVR which was recorded of record.

10. Debtor timely filed his Chapter 13 schedules and Chapter 13 Plan and listed the IRS as an unsecured claim for alleged civil tax penalties under §§ 6700 and 6701 of the Tax Code, describing such alleged tax claims as "unknown" in amount, and contingent, disputed, and unliquidated in character.

11. On September 5, 1991, the IRS filed a proof of claim wherein the IRS alleged that Debtor is indebted to the United States for an alleged unsecured general tax claim including, but not limited to, an alleged civil tax penalty under § 6701 of the Tax Code in the amount of $109,000 and an assertion against Debtor, in his capacity as partner in BVR, in the form of an unsecured general tax claim aggregating $695,402, which represents the BVR civil tax penalty assessment of $695,402.

12. On December 23, 1991, Debtor filed objections to tax claims, objecting to the IRS' proof of claim, including, but not limited to, the IRS' alleged claims for civil tax penalties under §§ 6700 and 6701 of the Tax Code.

13. On January 15, 1992, the IRS filed an objection to confirmation of Debtor's Modified Chapter 13 Plan, which included an objection that Debtor was not entitled to be in a Chapter 13 proceeding by virtue of the debt limitations of § 109(e) of the Bankruptcy Code.

14. While not necessary to this discussion, the Court notes that the parties apparently may have reached an informal agreement regarding the 15% pre-payment penalties required under § 6703(c) of the Tax Code, and possibly agreed to limit the amounts required to be paid by Debtor and BVR to challenge the assessment of penalties. (Letter of William E. Bailey dated January 29, 1992 to Court; September 13, 1991 letter from Lawrence R. Jones, Jr. to James R. Turton). This finding is not a binding finding that any such agreement exists, if it does.

Under § 109(e), the contingent or unliquidated status of a Chapter 13 debtor's unsecured debts is determined as of the petition debt. *Brockenbrough v. Commissioner, I.R.S.*, 61 B.R. 685 (W.D.Va.1986); *Matter of Belt*, 106 B.R. 553 (Bankr.N.D.Ind.1989). Thus, since the IRS assessment was not made until after Debtor filed his petition (FF 9), the Court does not have to be concerned with the possible statutory effect, for debt liquidation purposes under § 109(e), of § 6703(c) of the Tax Code and the 15% payment provided therein.

### Conclusions of Law

1. On July 24, 1991, the date that Debtor filed his Chapter 13 petition, the tax penalties, made the subject of the IRS proof of claim, were contingent unliquidated obligations. Section 109(e) of 11 U.S.C. provides, in part, as follows:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,-000 ... may be a debtor under chapter 13 of this title.

Although the Code does not define either "contingent" or "liquidated", the term "debt" is defined in 11 U.S.C. 101(11) as "liability on a claim." Whether a claim is "liquidated" or "unliquidated" is addressed by Professor McCormick in his handbook entitled *Damages*, as follows:

A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. Examples are claims upon promises to pay a fixed sum, claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate. If the claim is one of the kinds mentioned above, it is still 'liquidated', by what seems the preferable view, even though it is disputed in whole or in part.

C.T. McCormick, *Damages* § 54 p. 213 (1935).

2. This same view has been expressed in the bankruptcy context in *In re Sylvester*, 19 B.R. 671 (Bankr.BAP 9th Cir. 1982), where the Ninth Circuit stated:

A meaning [of the term "liquidated"] that is consistent with the [Bankruptcy] Code is found in a Bankruptcy Act case, *In re Bay Point Corp.*, 1 B.C.D. 1635 (D.N.J.1975):

The concept of liquidation has been variously expressed. The common thread ... has been ready determination and precision in computation of the amount due.... Some cases have stated the test as whether the amount due is capable of ascertainment by reference to an agreement or by simple computation.

Under this approach, contract debts, even though disputed, are considered liquidated and tort claims are not. Tort claims and quantum meruit claims, by their very nature, are not fixed until a judicial award fixes their liability and amount (*e.g.*, tort or quantum meruit claims require proof as to liability, reasonable value, and damages). *Denham v. Shellman Grain Elevator, Inc.*, 444 F.2d 1376, 1380 (5th Cir.1971).

3. Section 6700, captioned "Promoting abusive tax shelters, etc." provides a penalty for two types of misconduct by those who organize, promote, or sell interests in (or who assist in the organization, promotion or sale of interests in) a partnership or other entity, or an investment plan or arrangement, or any other plan or arrangement: (1) knowingly making or furnishing false or fraudulent statements as to material matters (§ 6700(a)(2)(A)); or (2) making or furnishing gross valuation overstatements (§ 6700(a)(2)(B)). The prohibited statements must be made with respect to the allowability of credits or deductions or other tax benefits by reason of an investor holding an interest in the partnership or other entity, plan or arrangement. Section 6701 provides a penalty for knowingly aiding and abetting in the understatement of tax liabilities.

4. Various courts have provided guidance for the purposes of defining the meaning of a "contingent debt" for purposes of § 109 of the Bankruptcy Code. In *In re Blehm*, 33 B.R. 678 (Bankr.D.Col.1983), the Bankruptcy Court was confronted with questions of whether § 109(e) of the Bankruptcy Code would preclude the debtor from continuation of a Chapter 13 proceeding as a result of certain corporate veil-piercing claims of creditors made against the debtor. The court viewed the nature of veil-piercing claims as being in the nature of a tort claim. The court, in sustaining the position of the debtor's entitlement to remain in Chapter 13 notwithstanding those asserted veil-piercing claims made by creditors, relied upon the Fifth Circuit case of *Denham v. Shellman Grain Elevator, Inc.*, *supra*, and stated at p. 680 as follows:

... the plaintiff must prove elements justifying the veil-piercing in the first place in order to establish the Debtors' liability. In this respect, it is like a tort claim, where the plaintiff must first establish negligence. It seems to this Court that veil-piercing is *more* like a tort claim than a contract claim.... This Court concludes, therefore, that the veil-piercing claims are contingent and should not be included in the § 109(e) computation.

5. In the case at hand, the tax claims asserted by the IRS against Debtor are similar to tort claims, in that the IRS has the burden of proving by a preponder-

ance of the evidence the factual predicate for statutory damages based on violations of §§ 6700 and 6701 of the Tax Code. 26 U.S.C.A. § 6703(a).[1] Claims for civil tax penalties under §§ 6700 and 6701 of the Tax Code are unlike any other tax claims of the IRS[2] in that the burden of proof, normally on the taxpayer, is on the United States to prove penalty violations as mandated by Congress. See, § 6703(a) of the Tax Code. The liability of Debtor in the instant case to pay the IRS is triggered only by the United States meeting its burden of proof under § 6703(a)(1) in a trial on the merits. *Franklet v. United States*, 578 F.Supp. 1552, 1559 (N.D.Cal.1984), *aff'd* 761 F.2d 529 (9th Cir.1985); *United States v. Music Masters*, 621 F.Supp. 1046, 1054 (W.D.N.C.1985), *aff'd* 816 F.2d 674 (4th Cir.1987).

6. Based on the foregoing, this Court finds that the statutory tax penalties assessed against Debtor under §§ 6700 and 6701 of the Tax Code are contingent nonliquidated obligations, and are not to be counted in evaluating whether Debtor is eligible, pursuant to § 109(e), to be a debtor under Chapter 13 of the Bankruptcy Code. Dismissal of the petition is inappropriate. Based on the Court's findings, the bad faith issue raised by the United States under § 1325(a)(3) need not be addressed, as well as its other objections. Debtor needs to institute an adversary proceeding shortly, pursuant to § 505 of the Bankruptcy Code, to determine the amount and legality of any statutory penalties claimed by the United States under §§ 6700 and 6701 of the Tax Code. Because the tax issues are so

critical to the confirmation and feasibility of Debtor's plan, the confirmation hearing on Debtor's plan will be continued until those tax issues are resolved. The above constitutes the Court's Findings of Fact and Conclusions of Law. Where appropriate, a Finding of Fact shall be construed to be a Conclusion of Law, and *vice versa.*

---

1. *In re Loya*, 123 B.R. 338 (9th Cir.BAP 1990) appears to be contra *Denham, supra.*

   There are some 100% tax penalty cases which would lend some credence to the IRS position. *See, for example, In re Lamar*, 111 B.R. 327 (D.Nev.1990); *In re Stinchfield*, 126 B.R. 251 (Bankr.E.D.Tex.1990) (debtor did not dispute the IRS calculators and apparently did not dispute that he was a responsible officer of the corporation); *In re Jones*, 129 B.R. 1003 (Bankr. N.D.Ill.1991), *aff'd*, 134 B.R. 274 (N.D.Ill.1991); *Brockenbrough v. Commissioner, I.R.S., supra. Also see, In re Hutchens*, 69 B.R. 806 (Bankr. E.D.Tenn.1987). However, without agreeing or disagreeing with such decisions, this Court is of

the opinion that the IRS claims arising under tax statutes in question in this case are more similar to tort and are contingent claims. *See Denham v. Shellman Grain Elevator, Inc., supra.* Recognizing that there is no specific case in point on this particular tax statute, Debtor takes certain risks by remaining in Chapter 13 rather than converting to Chapter 11 as prayed for alternatively.

2. *i.e.*, outside the bankruptcy context and the effect of Bankruptcy Rule 3001 and any rebuttal by Debtor of the *prima facie* effect of a proof of claim under Bankruptcy Rule 3001(f).