**In re Judith W. READER, Debtor.**

**No. 00–20526 EEB.**

United States Bankruptcy Court,
D. Colorado.

March 26, 2002.

---

William M. Bass, Denver, CO, for debtor.

Douglas E. Larson, Griff, Larson & Laiche, Grand Junction, CO, for Probate Estate of Marvin Westlake.

## ORDER

ELIZABETH E. BROWN, Bankruptcy Judge.

THIS MATTER comes before the Court on a challenge by creditor Mary Beth Klippert ("Klippert") to the Debtor's eligibility for Chapter 13 relief. In particular, she contends that the Debtor exceeds the stat-

utory limitations on noncontingent, liquidated, unsecured debt set forth in 11 U.S.C. § 109(e) ("Section 109(e)"). The proof of claim, which she filed as the representative of the probate estate of Marvin Westlake, by itself exceeds the statute's limits. The Debtor disputes this claim and, therefore, asserts that the debt is "contingent" and "unliquidated." After reviewing the briefs and affidavits submitted by the parties, and for the reasons set forth below, the Court finds that this Debtor is not eligible for Chapter 13 relief and that it is not necessary to hold an evidentiary hearing in order to make this determination.

## FACTUAL BACKGROUND

Marvin Westlake, now deceased, had three children: Judith Reader, Mary Beth Klippert, and Marvin Westlake, Jr. For some period of time prior to his death, the Debtor acted as conservator for his estate, until her siblings alleged that she had misappropriated funds through gifts to herself and her son. Klippert obtained an audit of Conservator Reader's records. The Special Master issued a Report, stressing that the records were incomplete, but noting that there were transfers made that benefitted Ms. Reader, which he considered inappropriate given the role of a conservator and the lack of disclosure to the probate court. After a status conference on this matter, the probate court issued an Order, dated July 13, 2000, in which it "made clear for the record that the burden of proof in this case is upon the former Conservator, Judith Reader, to show that funds and expenditures were properly authorized and accounted for in her capacity as a fiduciary, and the burden is upon Ms. Reader to show the Court this was done." Before the scheduled probate court hearing could take place, the Debtor filed her Chapter 13 petition.

The Special Master summarized his extensive findings as follows:

| | | |
|---|---|---|
| 1. | Additional receipts deemed to be gifted and used by Judith Reader (insurance proceeds) | $118,505.38 |
| 2. | Expenditures deemed inappropriate | $199,845.64 |
| 3. | Additional Claims deemed appropriate (Items such as loans that were repaid by Judith Reader. These items reduce the amount allegedly misappropriated.) | $ (93,867.93) |
| 4. | Total: | $224,483.09 |

In a supplementary affidavit prepared for the estate on January 17, 2002, the Special Master stated that his initial findings were in error to the extent that he has given the Debtor "credit" in the "Additional Claims" category above for her repayment of certain Medicaid payments, improperly paid to the Estate of Marvin Westlake, as a result of applications for such aid made by Judith Reader. The Special Master, in his supplementary affidavit, asserts that it was error to credit this amount to the Debtor because the Debtor has not actually made any repayments.

> To the best of my knowledge a repayment has not been made, and accordingly an actual credit to Judith Reader is premature unless and until Ms. Reader paid this claim anticipated to be asserted against the Estate....
>
> Deleting this credit from the calculations of amounts that the Estate could claim against Judith Reader would result in a

remaining claim in the amount of $270,527.43.

Affidavit, ¶ 8–9. Accordingly, the Estate of Marvin Westlake filed a Proof of Claim in the amount of $270,527.43 for "Misappropriation from Estate."

In her bankruptcy schedules, the Debtor does not acknowledge any portion of this claim. On her Schedule F, the Debtor lists the Estate of Marvin Westlake as holding a contingent, unliquidated, disputed claim, in the amount of "zero."

## DEFINITION OF CONTINGENT AND UNLIQUIDATED DEBT

■■■■ Section 109(e) provides that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less that $269,250 and noncontingent, liquidated, secured debts of less than $807,750 ... may be a debtor under chapter 13 of this title." Whether a debt is liquidated turns on whether it is subject to "ready determination and precision in computation of the amount due." *In re Sylvester*, 19 B.R. 671, 673 (9th Cir. BAP 1982), quoting *In re Bay Point Corp.*, 1 B.C.D. 1635 (Bankr.D.N.J.1975); *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir.1987). A debt is considered to be "liquidated" if the amount is readily ascertainable. *In re Burgat*, 68 B.R. 408 (Bankr.D.Colo.1986). A debt is noncontingent when all events giving rise to liability occurred prior to the debtor's filing for bankruptcy. *In re Mazzeo*, 131 F.3d 295, 303 (2nd Cir.1997). "Only if liability relies on some future extrinsic event which may never occur will the debt be held to be contingent." *In re Nesbit*, 2000 WL 294834, at *2 (Bankr. W.D.Pa.2000).

"The majority of courts considering the question have held that merely because a debtor disputes a debt, or has potential defenses or counterclaims that might reduce the creditors' actual collection, the debt is not thereby rendered 'contingent' or 'unliquidated.'" *In re Crescenzi*, 69 B.R. 64, 65 (S.D.N.Y.1986); *In re Jordan*, 166 B.R. 201, 202 (Bankr.D.Me.1994) (" [T]he vast majority of courts have held that the existence of a dispute over either the underlying liability or the amount of a debt, does not automatically render the debt either contingent or unliquidated."). Following the majority's approach, the bankruptcy courts in this district have "rejected the view that a disputed debt is unliquidated and thus must be excluded from Section 109(e) calculations. The Courts, instead, adopted the generally accepted notions that a 'debt' is (a) essentially synonymous with a 'claim' and (b) a claim qualifies as liquidated, if it is readily calculable or ascertainable as to amount, and (c) a debtor's dispute, defenses or counterclaims, do not affect the character and classification of claim as being liquidated." *In re Clark*, 91 B.R. 570, 574 (Bankr.D.Colo.1988) (emphasis omitted) (referring to *In re Blehm*, 33 B.R. 678, 679 (Bankr.D.Colo.1983); *In re Burgat*, 68 B.R. 408, 411 (Bankr.D.Colo.1986); *In re Thomas*, 211 F.Supp. 187, 192 (D.Colo. 1962), aff'd, 327 F.2d 667 (10th Cir.1964)).

■■■ The Debtor contends that the Special Master's Report is not only incomplete, but by its own terms acknowledges that the validity of many of the allegedly inappropriate transactions will have to be determined by the probate court. As a tort claim, the Debtor asserts that the claim is unliquidated because it requires a court determination. Klippert disagrees, claiming that a dispute as to the basis of liability does not render a claim contingent or unliquidated, even if the dispute involves the amount of the claim.

In *In re Knight*, 55 F.3d 231 (7th Cir. 1995), the debtor also argued that the statutory fines and penalties assessed against

him were contingent because they had not been reduced to judgment by the petition date. In holding that the debt was non-contingent, the Seventh Circuit stated:

> In broad terms, the concept of contingency involves the nature or origin of liability. More precisely, it relates to the time or circumstances under which the liability arises. "In this connection 'liability' does not mean the same as judgment or remedy, but only a condition of being obligated to answer for a claim."

*Id.* at 236 (quoting *In re McGovern,* 122 B.R. 712, 715 (Bankr.N.D.Ind.1989)). Both the Seventh Circuit and the underlying bankruptcy court relied on *McGovern,* a case in which, after an audit, the Small Business Administration alleged that the debtor had misappropriated public funds. Although not reduced to judgment, the court found that the "misappropriation debt was both liquidated (because it could be 'readily ascertained either by reference to an agreement or through simple mathematics,' ...) and noncontingent (because 'all of the allegations upon which the fact of liability is based relate to events that have already occurred,'....)." *In re Knight,* 55 F.3d at 236 (quoting *In re McGovern,* 122 B.R. at 715–716).

Similarly, in *In re Jordan,* 166 B.R. 201 (Bankr.D.Me., 1994), an employer commenced a civil suit against an employee for misappropriation of approximately $280,000. The employee filed for Chapter 13 bankruptcy before a judgement was rendered. The creditor/employer filed a proof of claim in the amount of $288,295.74. The debtor/employee disputed the claim. The court held that the creditor's claim was "noncontingent and liquidated because all events giving rise to liability occurred pre-petition and the amount of the debt can be calculated." *Id.* at 202.

Here the amount of the claim can be readily determined based on the extensive findings by the Special Master. While the Special Master acknowledged that a court will have to rule on the validity of the transactions, this fact does not make this debt "unliquidated." Based on the records, he was able to quantify the transactions that he deemed inappropriate. The probate court clearly specified that the burden was then on the Debtor to justify these transactions. The fact that the Debtor may raise defenses or counter-claims does not render the debt either unliquidated or contingent. Liability is not dependent on some future act or omission, that may or may not occur. It is based on the prepetition acts of the Debtor as the former conservator of her father's estate, regardless of whether the claim had been reduced to judgment.

The more problematic aspect of the estate's claim is that portion that is attributable to the anticipated claim against the probate estate by the State of Colorado for Medicaid reimbursement. The Debtor considers any Medicaid-related claim to be contingent because, she argues, it is dependent on a future "triggering event," i.e. the filing of a claim by the State. The triggering event, however, is not the filing of a claim, but the Debtor's application for and receipt of payments to which the estate was not entitled. These acts occurred prepetition.

■ The Debtor further claims that $47,823.59 of the estate's claim is contingent because the statutory deadline for filing a claim by the State of Colorado has passed. There is some merit to an argument that a time-barred claim should not be considered in determining eligibility. If the claim were required to be filed in the bankruptcy court, this Court could more readily determine that it was barred and, therefore, not a claim that should be

counted. However, the determination of eligibility is intended to be made early in a case, before the proof of claim bar date would have passed. In this case, the Court is making this determination nearly two years after the case has been filed, due in part because the parties did not bring it directly to the Court's attention and in part because of unusual circumstances involving the transfer of this case from one judge to another. Regardless of when the eligibility decision is actually made, Section 109(e) states that it must reflect the claims as they existed on the date of the filing. In this case, the Debtor has not specified whether the claim is barred now, or whether it was barred on the petition date. In his recent supplemental affidavit, the Special Master continues to refer to the Medicaid-related claim as "this claim anticipated to be asserted against the Estate." To resolve this dispute, the Court would need further evidence. In assessing eligibility under Section 109(e), however, this Court is not required to resolve this underlying dispute as to whether the Medicaid claim was barred as of the petition date.

## AN EVIDENTIARY HEARING IS NOT REQUIRED

In *In re Barcal,* 213 B.R. 1008 (8th Cir. BAP 1997), the debtor argued that the bankruptcy court erred when determining eligibility, by failing to conduct a full evidentiary hearing to determine the amount of his tax liabilities and his objections to the IRS' proof of claim. The appellate panel held that to require the bankruptcy court to decide the merits of disputed claims before determining eligibility imposes an impractical burden and delay upon the Chapter 13 court. *Id.* at 1015. It defined the bankruptcy court's duty as follows:

> Rather than making final determinations on disputed liabilities, it is appro-

priate for a court considering eligibility to rely primarily upon a debtor's schedules and proofs of claim, checking only to see if these documents were filed in good faith. In so doing, however, the court should neither place total reliance upon a debtor's characterization of a debt nor rely unquestionably on a creditor's proof of claim, for to do so would place eligibility in control of either the debtor or the creditor. At a hearing on eligibility, the court should thus, canvass and review the debtor's schedules and proofs of claim, as well as other evidence offered by a debtor or the creditor to decide only whether the good faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits.

. . . .

The foregoing conclusion is further supported by the fact that § 109(e) does not require a hearing to determine eligibility and by the fact that Chapter 13 must move very quickly with the debtor filing a plan within 15 days of the petition. Further to afford a debtor a full determination on the merits concerning his disputed tax liabilities would permit, and indeed encourage, improper forum shopping. Clearly, this Debtor was already litigating the subject tax liabilities in two tax proceedings in district court at the time he filed his Chapter 13 petition, and given that the only debts to be treated in this Chapter 13 proceeding were tax obligations owed to the United States and the State of California, litigating on the merits before the bankruptcy court would condone such forum shopping and delay prompt and appropriate administration of the Chapter 13 proceeding.

*Id.* at 1015–1016 (citations omitted). *See In re Pearson,* 773 F.2d 751 (6th Cir.1985). *See also In re Young,* 237 F.3d 1168, 1171,

894

n. 1 (10th Cir.2001); *In re Edwards*, 51 B.R. 790 (Bankr.D.N.M.1985); *In re Clark*, 91 B.R. at 575, n. 6. *But see In re Sylvester*, 19 B.R. 671, 673 (9th Cir. BAP 1982); *In re Teague*, 101 B.R. 57, 60 (Bankr. W.D.Ark.1989); *In re Lambert*, 43 B.R. 913 (Bankr.D.Utah 1984).

 In this case, the Debtor had a forum in the probate court to resolve any dispute as to the validity of this claim. In light of the probate court's admonition that the burden was on her to disprove the Special Master's Report, she engaged in forum shopping by filing her Chapter 13 petition. Should the bankruptcy court, as the Debtor contends, hear the complex and lengthy accounting issues reflected in the Special Master's Report and determine whether certain claims are barred in the probate court in order to make a summary determination as to eligibility? The answer is no. This Court finds that its duty is to canvass and review the Debtor's schedules and the proofs of claim and other evidence offered, but only as to whether the good faith, facial amount of the Debtor's liquidated and noncontingent debts exceed the eligibility limits. In light of the Special Master's Report, the Debtor could not in good faith list the probate estate's claim with a value of $0.00. While she could have properly listed this claim as "disputed," in order to avoid making any admission against her interest, she could not in good conscience pretend that there was no claim asserted against her. In fact, the only claims filed in this case are those which arose from her actions as conservator. The Special Master's Report is not conclusive as to the amount of this claim or its validity, but it meets the good faith, facial test. This case has languished long enough in bankruptcy. It would not serve the interests of justice to delay it further with a lengthy trial on this disputed claim.

Accordingly, it is hereby ORDERED that this Chapter 13 case is dismissed because the Debtor exceeds the statutory limits on noncontingent, liquidated, unsecured debts.