**In re Ernest Andrew SALAZAR, Jr., and Kathryn Diane Salazar, Debtors.**

**No. 05–16058 HRT.**

United States Bankruptcy Court, D. Colorado.

Aug. 15, 2006.

Stephen E. Berken and Jennifer Pielsticker, Law Offices of Stephen E. Berken, Denver, CO, for Debtors.

Charles H. Torres, Charles H. Torres, P.C., Denver, CO, Michael Cooksey, Cook-

sey & Cooksey, P.A.; and Porya Mansorian, for the Judson Creditors.

## ORDER FINDING THAT DEBTORS ARE ELIGIBLE FOR CHAPTER 13 RELIEF

HOWARD R. TALLMAN, Bankruptcy Judge.

This case comes before the Court on Debtors' *Amended Chapter 13 Plan Dated: October 7, 2005* (docket # 48) [the "Amended Plan"]; *Debtors' Motion to Confirm Chapter 13 Plan Dated October 6* [sic], *2005* (docket # 50) [the "Motion to Confirm"]; and *Judson Creditors' Renewed Objection to Debtors' Amended Chapter 13 Plan* (docket # 77) [the "Objection"].

Beginning on January 20, 2006, the Court held a two day evidentiary hearing limited to issues relating to the Debtors' eligibility to be chapter 13 debtors under 11 U.S.C. § 109(e). The parties submitted written closing arguments regarding eligibility. The Court has reviewed the various pleadings filed in this matter and considered the evidence and argument presented at hearing.

### I. BACKGROUND

The Debtors filed their chapter 13 petition on March 23, 2005. The bankruptcy filing was precipitated by lengthy state court litigation in Weld County, Colorado, to which Mr. Salazar was a party. Mr. Salazar is the owner of businesses that engage in construction activities and mortgage services. Mrs. Salazar also works in those businesses. The Judson Creditors are a group comprised partly of individuals who are plaintiffs in that Weld County litigation as well as other similarly situated individuals who do not appear to have become involved in that lawsuit. Each of the Judson Creditors claim to have been de-frauded by Mr. Salazar in connection with a series of real estate investments. Eight proofs of claim have been filed on behalf of the individual Judson Creditors. Those proofs of claim allege unsecured debts that total over $4.6 million. All of those proofs of claim relate to the Judson Creditors' allegation that they have been defrauded by Mr. Salazar. The Debtors' Plan is a 60 month plan that provides escalating payments that begin at the level of $850.00 per month and end at the level of $2,300.00 per month for the final 12 months of the plan term. The Debtors estimate that approximately $58,000.00 will be shared by all of the unsecured creditors, including the Judson Creditors. The Judson Creditors' Objection raises issues with respect to the Debtors' chapter 13 eligibility under § 109(e). Because all Plan confirmation issues are moot if the Debtors are ineligible for chapter 13 relief, the Court chose to address eligibility as an initial matter in this separate proceeding.

### II. DISCUSSION

#### A. Objection to Admission of Exhibits

At hearing, the Debtors objected to the admission of certain exhibits, which had not been provided to the Debtors by the Judson Creditors in a timely manner in accordance with the Court's scheduling order. The Court took the matter under advisement. Admission of those exhibits is denied. Requiring exhibits to be exchanged several days before a proceeding insures that the parties have had an opportunity to examine documents that will be used in the hearing. It prevents unfair surprise and insures that a hearing will not be delayed because a party needs to take time to review voluminous documents during the proceeding. The Judson Creditors gave an insufficient explanation for the failure to abide by this Court's scheduling order.

■ However, the Judson Creditors are not harmed by the Court's denial of admission with respect to those exhibits. As the Court notes in its discussion, it finds that it must limit its examination of evidence at this eligibility stage to the Debtors' schedules; the filed proofs of claim; and other limited evidence bearing directly upon the good faith and reliability of the schedules and proofs of claim. Therefore, the Court finds it necessary to disregard much of the voluminous evidence that it heard during this proceeding.

*B. Eligibility Under 11 U.S.C. § 109(e)*

The provisions of § 109(e)[1] control eligibility for relief under chapter 13. That section provides that

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontin-

gent, liquidated, unsecured debts that aggregate less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e) (West 2005). The Debtors have scheduled secured debts well below the eligibility threshold reflected in § 109(e) and no issue has been raised with respect to the total of the Debtors' secured debts. The focus of the Court's eligibility determination, therefore, is upon the amount of the Debtors' unsecured debts. If the debtors owed *noncontingent, liquidated, unsecured* debts, on the petition date, in excess of $307,675.00, then they are ineligible for relief under chapter 13 and the case must be dismissed.

On their bankruptcy schedules, the Debtors have scheduled total unsecured debts in the amount of $129,544.00. But, this amount differs greatly from the total amount of unsecured claims that have been filed in this case.

The following table lists all of the timely filed proofs of claim in this case:

| No. | Creditor | Total Claim | Secured | Priority | Unsecured | Judson Creditors |
|---|---|---|---|---|---|---|
| 1 | Target | $490.03 | | | $490.03 | |
| 2 | Chevron | $267.24 | | | $267.24 | |
| 3 | VW Credit | $17,977.69 | $17,977.69 | | | |
| 4 | AmEx Travel | $42,011.30 | | | $42,011.30 | |
| 5 | Kohl's Dept. Store | $135.91 | | | $135.91 | |
| 6 | IRS | $21,688.51 | | $21,622.13 | $66.38 | |
| 7 | World Savings | $245,955.60 | $245,955.60 | | | |
| 8 | B–Line, L.L.C. | $2,130.67 | | | $2,130.67 | |
| 9 | B–Line, L.L.C. | $1,421.38 | | | $1,421.38 | |

**1.** Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. This case was filed prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 (Apr. 20, 2005) ["BAPCPA"]. Therefore, the statutory provisions applicable to the Court's determination in this case will be those that were in effect prior to the enactment of BAPCPA.

| | | | | | | |
|---|---|---|---|---|---|---|
| 10 | Ford Motor Credit | $14,213.90 | $14,213.90 | | | |
| 11 | NCCMC | $1,915.81 | | | $1,915.81 | |
| 12 | eCAST/HSBC Bank | $1,317.98 | | | $1,317.98 | |
| 13 | eCAST/HSBC Bank | $517.77 | | | $517.77 | |
| 14 | Centennial Bank | $10,907.67 | $10,907.67 | | | |
| 15 | Centennial Bank | $6,921.05 | $6,921.05 | | | |
| 16 | Sherman Acquisition | $2,268.95 | | | $2,268.95 | |
| 17 | Sherman Acquisition | $5,884.32 | | | $5,884.32 | |
| 18 | Richard & Louise Parish | $1,043,000.00 | | | $1,043,000.00 | $1,043,000.00 |
| 19 | James Leatherwood | $517,000.00 | | | $517,000.00 | $517,000.00 |
| 20 | Kevin & Diane McCarley | $897,370.00 | | | $897,370.00 | $897,370.00 |
| 21 | Leyan Duhart | $445,733.34 | | | $445,733.34 | $445,733.34 |
| 22 | Randy Anglin | $423,000.00 | | | $423,000.00 | $423,000.00 |
| 23 | Robert Rivas | $435,000.00 | | | $435,000.00 | $435,000.00 |
| 24 | Jamie Judson | $820,520.00 | | | $820,520.00 | $820,520.00 |
| 25 | Sak's Fifth Ave. | $1,735.34 | | | $1,735.34 | |
| 26 | Daimler Chrysler Services | $24,451.14 | $18,650.00 | | $5,801.14 | |
| 27 | Abel Ramirez | $44,500.00 | | | $44,500.00 | $44,500.00 |
| | **Totals** | **$5,028,335.60** | **$314,625.91** | **$21,622.13** | **$4,692,087.56** | **$4,626,123.34** |

The total of the unsecured claims (priority and general) filed in the case is $4,713,709.69. It will be immediately recognized that the difference between the relatively modest amount of unsecured claims scheduled by the Debtors and the total of the filed proofs of claim is accounted for by the claims filed by members of the Judson Creditors group. Claims filed by the Judson Creditors account for $4,626,123.34 (98%) of the total of the filed unsecured proofs of claim.

### C. Eligibility Analysis

An important issue the Court confronts in this case is the level of analysis that it must apply to the Judson Creditors' claims in order to determine the Debtors' eligibility for relief under chapter 13. Determination of eligibility for relief under chapter 13 is a threshold matter that should be determined on a summary basis without the need for extensive evidence. *See, e.g., In re Slack*, 187 F.3d 1070, 1073–74 (9th Cir.1999); *In re Arcella–Coffman*, 318 B.R. 463, 472 (Bankr.N.D.Ind.2004) ("Any solution that would require the Court to engage in a lengthy fact finding process would add dramatically to the cost of chapter 13, inject an unwarranted element of uncertainty into the section 109(e) analysis and hamper the rehabilitative goals of chapter 13.").

Chapter 13 eligibility has been analogized to the determination of whether or not a federal district court has diversity jurisdiction over a case based on the amount of the claim asserted in the complaint. *Comprehensive Accounting Corp.*

*v. Pearson (In re Pearson),* 773 F.2d 751, 757 (6th Cir.1985) ("This threshold eligibility determination for Chapter 13 is in many respects like the threshold subject matter jurisdiction determination in diversity cases where the $10,000 minimum amount in controversy is challenged.").[2] Under that view, the Court need look no further than the Debtors' schedules, "checking only to see if the schedules were made in good faith." *Scovis v. Henrichsen (In re Scovis),* 249 F.3d 975, 982 (9th Cir.2001) (quoting *Pearson,* 773 F.2d at 757).

■ If the Court were to adopt the view that the contents of the Debtors' schedules, if filed in good faith, control the eligibility determination, then the Court would easily find that the Debtors are eligible for chapter 13 relief. The claims asserted by the Judson Creditors are scheduled variously as either "$0.00" or "unknown," and are all scheduled as disputed and unliquidated. The Court has no evidence before it to lead it to the conclusion that those entries were made in bad faith. The Debtors have vigorously defended the claims made by the Judson Creditors in the Weld County action. It is quite clearly the Debtors' position that they owe nothing to any of the Judson Creditors. The Court cannot say that the Debtors have scheduled those claims in bad faith where the manner in which they have been scheduled reflects the position that the Debtors have taken with respect to those claims from the outset.

■ But, the Court does not adopt the view that the Debtors' schedules alone control the eligibility determination. The requirement that a debt must be liquidated to apply towards the eligibility requirements suggests that the Court may not rely solely upon the Debtors schedules. A claim may well be liquidated even though the debtor, in good faith, schedules a claim at $0.00 or "unknown" because there is a dispute as to liability on the claim. *Hounsom v. U.S.,* 325 B.R. 319, 324 (M.D.Fla. 2005); *In re Huelbig,* 313 B.R. 540, 544 (D.R.I.2004); *In re Dow Corning Corp.,* 215 B.R. 346, 355 (Bankr.E.D.Mich.1997). Neither may the Court rely solely upon *amounts* reflected in filed proofs of claim. Those claim amounts may be liquidated or unliquidated depending upon the basis of the claim and the certainty with which damages may be calculated. Instead, the Court must examine the schedules and the filed proofs of claim.

■ At the same time, the purpose of the Court's review of the Debtors' schedules and the creditors' proofs of claim is not to address the merits of the claims or to attempt to determine liability. It is solely to determine: 1) whether or not the schedules and proofs of claim were made in good faith; and 2) whether the claim is liquidated or not so that the eligibility determination may be made. The Court agrees with the comments of the 8th Circuit Bankruptcy Appellate Panel in the

**2.** However, unlike determinations of diversity jurisdiction, § 109(e) merely sets down eligibility requirements for relief under chapter 13. A finding that a debtor is ineligible for relief under chapter 13 does not deprive a bankruptcy court of its jurisdiction of the case. *Rudd v. Laughlin,* 866 F.2d 1040, 1042 (8th Cir.1989) ("Unlike the statute which grants diversity jurisdiction to district courts only when the required amount is in controversy ... the statutes governing the authority of federal courts to hear bankruptcy cases do not limit jurisdiction according to amounts involved. Nor do we believe that 11 U.S.C. § 109 is meant to restrict the jurisdiction granted under these statutes."). Failure of a debtor to fall within the guidelines for relief under chapter 13 simply means that the debtor may exercise the right to dismiss a case filed under chapter 13, 11 U.S.C. § 1307(b), or convert the case to another chapter under which he is eligible for relief.

case of *Barcal v. Laughlin (In re Barcal)*, 213 B.R. 1008 (8th Cir. BAP 1997):

> Rather than making final determinations on disputed liabilities, it is appropriate for a court considering eligibility to rely primarily upon a debtor's schedules and proofs of claim, checking only to see if these documents were filed in good faith. In so doing, however, the court should neither place total reliance upon a debtor's characterization of a debt nor rely unquestionably on a creditor's proof of claim, for to do so would place eligibility in control of either the debtor or the creditor. At a hearing on eligibility, the court should thus, canvass and review the debtor's schedules and proofs of claim, as well as other evidence offered by a debtor or the creditor to decide only whether the good faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits.

*Id.* at 1015 (citations omitted). Therefore, the Court will not address the merits of the claims asserted against the Debtors, but will examine the Debtors' schedules and the filed proofs of claim only to the extent necessary to determine the liquidated amounts of claims asserted in good faith.

This eligibility hearing took two court days. The Court did not limit the evidence that it heard and, in the course of the hearing, the Court did hear extensive evidence and admit numerous exhibits. But, because the Court has determined that it is inappropriate to address the merits of the Judson Creditors' claims at the eligibility stage of these proceedings be-

yond the question of good faith, it has relied primarily upon the schedules filed by the Debtors and the proofs of claim filed in the case. It has considered the balance of the evidence taken at hearing only to the extent that those other forms of evidence shed light on the contents and reliability of information contained in the schedules and proofs of claim.

### D. Good Faith

■ As the Court has noted above, the Court cannot find that the Debtor has scheduled the claims of the Judson Creditors in bad faith. But scheduling those claims as "$0.00" or "unknown" is not helpful and does not end the inquiry. The cases also make it clear that the Court must also assess the good faith of the proofs of claim. The proofs of claim and other evidence bearing on those claims must satisfy the Court that the claimants are asserting those claims against the Debtors in the good faith belief that the law allows them to collect a payment or damages from the Debtors in the amount claimed.

The Court cannot find that the McCarley, Duhart and Leatherwood claims have been asserted in good faith. All three of those claimants have filed their own bankruptcy proceedings.[3] The Court's review of the debtors' schedules in those cases reveals that none of those debtors scheduled any claim against the Mr. Salazar when they filed their bankruptcy cases and, as of the date of the hearing in this matter, no amendments had been made to those debtors' bankruptcy schedules to add any claims against Mr. Salazar.[4] Nor

---

**3.** Kevin and Diane McCarley, Case No. 02–15818 DEC, chapter 7, filed 4/23/02; Jimmy R. Leatherwood and Marlene A. Leatherwood, Case No. 01–12954 EEB, chapter 7, filed 3/13/01; and LeYan Duhart, Case No. 05–22332 HRT, filed under chapter 13 on 5/20/05 and converted to chapter 7 on 11/1/05.

**4.** On January 30, 2006, subsequent to the hearing held in this matter, LeYan Duhart amended his Schedule B to add a claim

did the Court hear any credible explanation for those individual's failure to schedule their claims against Mr. Salazar during their hearing testimony. The Court will not allow parties who took the position in their own bankruptcy proceedings that they had no claims against Mr. Salazar to now assert those claims as a basis for denying bankruptcy relief in this case. In those three instances, where these claimants asserted in bankruptcy schedules, filed under oath with this Court, that they had no legal claims against Mr. Salazar, the Court cannot now find that the McCarleys' claim of $897,370.00; the Leatherwood claim of $517,000 or the Duhart claim of $445,733.34 are being asserted in this proceeding in good faith.

On December 30, 2005, after it came to the Court' attention that the McCarleys, and the Leatherwoods had previously filed bankruptcy proceedings, the Court issued an order inviting their respective bankruptcy trustee's to take whatever action they deemed appropriate in this case. On January 18, 2006, both trustees filed responses representing to the Court that the U.S. Trustee would be moving to reopen the McCarleys' and Leatherwoods' bankruptcy cases for the purposes of administering their claims against Mr. Salazar as assets of the respective bankruptcy estates. They requested that this proceeding be held in abeyance and stated that, if this Court declined to hold this proceeding in abeyance, they did not object to this Court hearing testimony from the McCarleys and Leatherwoods with respect to those claims. Subsequently, the U.S. Trustee did move to reopen the Leatherwood and McCarley bankruptcy cases and those cases were reopened on January 20, 2006, and February 8, 2006, respectively.

The posture of the Duhart claim is a bit different. That case was still open at the time of the hearing in this matter and remains open. The case was filed on May 20, 2005, as a chapter 13 case and it was converted to a chapter 7 case on November 1, 2005. At the time the case was filed, no claim against Mr. Salazar was scheduled as an asset on Mr. Duhart's Schedule B, nor was Mr. Duhart's involvement in the Weld County civil suit disclosed on his Statement of Financial Affairs. On January 30, 2006, subsequent to the hearing in this matter, Mr. Duhart did amend his Schedule B to disclose his claim against Mr. Salazar, and valued that claim at $90,000. Nonetheless, Mr. Duhart's trustee subsequently filed a no asset report in the case and has taken no apparent action to prosecute that claim. The case remains open, therefore, the claim remains property of the bankruptcy estate and may not be properly asserted or prosecuted by Mr. Duhart.

The claims of the McCarleys, the Leatherwoods and Mr. Duhart were all filed by individuals who lack any legal interest in the claims as a result of their bankruptcy filings. Those three claims are the property of the McCarley, Leatherwood and Duhart bankruptcy estates and, to date, none of those trustees has stepped forward to be substituted as a party in interest to prosecute the claims. So, it appears that, even if the Court could find that these claims had been asserted in good faith, the proper parties in interest have not yet entered appearances in this matter.

This finding of bad faith is made for the purpose of this proceeding only. The McCarleys, the Leatherwoods and Mr. Duhart are the only parties that the Court

against Mr. Salazar to his bankruptcy schedules. On March 16, 2006, Mr. Duhart's chapter 7 trustee filed a no asset report in his

bankruptcy case. Mr. Duhart received his discharge on March 8, 2006.

has before it in prosecution of these claims and they lack any interest in those claims. This bad faith finding does not prejudice the ability of the parties with necessary standing to prosecute those claims from asserting them against the Salazar bankruptcy estate.

### E. All Remaining Judson Creditor Claims are Noncontingent Claims

■ The Court finds that the unsecured claims asserted against the Debtors by the remaining Judson Creditors are noncontingent claims. "[I]t is generally agreed that a debt is contingent if it does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy." *Mazzeo v. U.S. (In re Mazzeo)*, 131 F.3d 295, 303 (2nd Cir.1997) (citing *In re Knight*, 55 F.3d 231, 236 (7th Cir.1995); *Nicholes v. Appleseed (In re Nicholes)*, 184 B.R. 82, 88 (9th Cir. BAP 1995); *Brockenbrough v. Commissioner*, 61 B.R. 685, 686–87 (W.D.Va.1986); *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex. 1980)); *see also In re Hanson*, 275 B.R. 593, 596 (Bankr.D.Colo.2002); *In re Reader*, 274 B.R. 893, 896 (Bankr.D.Colo.2002).

■ The Debtors have not claimed that the claims asserted by the Judson Creditors are contingent. The Debtors acknowledge that all of the events alleged in those proofs of claim occurred prior to the filing of the Debtor's bankruptcy petition. The Court, therefore, finds that the Judson Creditor debts are noncontingent. Thus, the critical determination in this case is the liquidated amount of the unsecured claims asserted against the Debtors.

### F. The Judson Creditor Claims are Not Liquidated

■ A debt is liquidated, *regardless of whether or not the Debtor disputes the debt*, if the amount of the debt is capable of being readily ascertained. *Geary v. U.S. (In re Geary)*, 55 Fed.Appx. 806, 808 (9th Cir.2003); *Slack v. Wilshire Ins. Co. (In re Slack)*, 187 F.3d 1070, 1073 (9th Cir.1999); *In re Mazzeo*, 131 F.3d 295 at 304; *U.S. v. Verdunn*, 89 F.3d 799, 802–03 (11th Cir. 1996); *In re Knight*, 55 F.3d at 235; *In re Hanson*, 275 B.R. at 596–97; *In re Reader*, 274 B.R. at 896.

■ Whether or not the amount of a claim is capable of ready ascertainment turns on the nature of the claim. It is relevant, although not necessarily controlling, whether the asserted claim is grounded in contract or in tort. In the case of *In re Robertson*, 143 B.R. 76 (Bankr.N.D.Tex. 1992), the court explained that

> '[a] claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. Examples are claims upon promises to pay a fixed sum, claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate. If the claim is one of the kinds mentioned above, it is still 'liquidated', by what seems the preferable view, even though it is disputed in whole or in part.'

*Id.* at 79 (quoting C.T. McCormick, Damages § 54 p. 213 (1935)). The court went on to note that

> 'The concept of liquidation has been variously expressed. The common thread ... has been ready determination and precision in computation of the amount due.... Some cases have stated the test as whether the amount due is capable of ascertainment by reference to an agreement or by simple computation.' Under this approach, contract debts, even

though disputed, are considered liquidated and tort claims are not.

*Id.* (quoting *Sylvester v. Dow Jones and Co. (In re Sylvester)*, 19 B.R. 671 (9th Cir. BAP 1982)); *see also Barcal v. Laughlin (In re Barcal)*, 213 B.R. 1008, 1014 (8th Cir. BAP 1997).

This Court would not go so far as to hold that tort claims may never be considered liquidated claims but it would certainly acknowledge that it will be more rare to find that a tort claim is liquidated. Claims based in contract are simply much more likely to be based on documents that set a fixed sum due and owing. By contrast, the nature of damages commonly awarded in negligence or intentional tort cases is such that, more often than not, the amount of damages awarded resides with the discretion of a finder of fact.

The concept of claim liquidation is not unique to bankruptcy law. Another circumstance where it frequently arises is the determination of whether prejudgment interest may be awarded. In many jurisdictions, prejudgment interest may only be awarded on liquidated claims. *See, e.g., Green Const. Co. v. Kansas Power & Light Co.*, 1 F.3d 1005, 1010 (10th Cir.1993) ("In Kansas, prejudgment interest is allowed on liquidated claims."); *Chesapeake Operating, Inc. v. Valence Operating Co.*, 193 F.3d 1153, 1156 (10th Cir.1999) ("It is well established that a damage award is not certain for purposes of the Oklahoma statute 'unless the amount of recovery is liquidated....' "); *Dunn v. Rescon Tech. Corp.*, 884 P.2d 965, 968 (Wyo.1994) ("prejudgment interest is recoverable ... on liquidated claims but not on unliquidated claims, with a liquidated claim being defined as one that is readily computable by basic mathematical calculation."); *Alta Vista Plaza v. Insulation Specialists Co.*, 186 Ariz. 81, 919 P.2d 176, 177 (Ct.App. 1995) ("Prejudgment interest is awarded as a matter of right on a liquidated claim ...."); *Hansen v. Rothaus*, 107 Wash.2d 468, 730 P.2d 662, 664 (1986) ("[W]hether prejudgment interest is awardable depends on whether the claim is a liquidated or readily determinable claim, as opposed to an unliquidated claim.").

In state law prejudgment interest cases, it is frequently held that the relevant inquiry, as to whether a claim is liquidated or not, is not whether it sounds in tort or contract but that the focus should be on the ability to determine damages by reference to an agreement or fixed standard instead of the discretion of the finder of fact. *See, e.g., Alta Vista Plaza,* 919 P.2d at 177; *Hansen,* 730 P.2d at 666. Thus, the Court must look at the claims asserted in the Judson Creditors' proofs of claim. Where there is an agreement or fixed standard that determines the amount of damages for a particular claim, assuming Mr. Salazar's liability, then the Court may find the claim to be liquidated. But where no agreement or fixed standard exists and determination of a damage amount will depend upon the finder of fact considering disputed evidence to determine a damage amount, then such claims are unliquidated.

The Judson Creditors allege that they have all been victims of Mr. Salazar's misrepresentations and inducements to become involved in real estate investments. Salazar is alleged to have represented himself to be an expert in the area of real estate investment and offered to enter into partnerships or joint ventures with the various members of the Judson Creditor group for investment purposes. The nature of the relationship was that Mr. Salazar would supply expertise and guidance to the individual investors and the investment funds would come from the individual investors. No written partnership or joint venture agreements were produced at

hearing. The Judson Creditors allege that: 1) Salazar misrepresented that the properties being "invested" in were priced well below market value and that they could be "flipped" after a short period of time for a profit on the investment; 2) Salazar introduced individuals to various builders and developers from whom properties were acquired; 3) Salazar arranged for appraisals that misrepresented the value of properties invested in: 4) Salazar received payments from the builders and developers on account of the sales made to these "investors:" 5) Salazar had members of the Judson Creditor group sign loan applications "in blank" for the purpose of making application for lines of credit; he then entered information on the loan applications that misrepresented the applicant's financial information; 6) The lines of credit that Salazar established for various members of the group were used to fund down payments for interests in real property; 7) Salazar assisted members of the group to obtain mortgages for the balance owed on the properties acquired; and that; 8) Salazar profited from brokering the mortgages that were placed on the properties the investors acquired. Inevitably, the Judson Creditors failed to realize profits on their investments. Their proofs of claim reflect damages that they claim to have suffered as a result of Mr. Salazar's alleged frauds and inducements.

As can be readily seen from that description of the Judson Creditors' claims, the Judson Creditors invested in real property interests expecting to profit therefrom. Common damages allegations that appear in the various proofs of claim include:

1. Many of the claimants assert that they were induced by Mr. Salazar to purchase real property or real property interests and claim a loss on the transaction after a subsequent sale of the property; after a foreclosure; or as a result of property still in possession of the claimant not being worth what was paid for it. Claims of this nature are unliquidated claims because the amount of any such claim of loss cannot be determined without a fact finder hearing disputed evidence relating to the value of the property or interest received by the claimant and ultimately making a value determination.

2. Claimants have included various expenses relating to the properties or interests they acquired or sought to acquire. These claims for expenses will be considered unliquidated. In general, those are amounts that would need to be taken into account by a fact finder to determine a claimant's ultimate loss on a particular investment property or interest.

3. Lost profits claims. Most, if not all, of the Judson Creditor claims assert lost profits on the investment deals. Assuming that lost profits is an element of damages that is recoverable under these circumstances, any such claims are speculative at best and are not subject to ready calculation according to any fixed standard. The lost profit claims are unliquidated.

4. The claimants have asserted that the actions of Mr. Salazar amount to Civil Theft under COLO.REV.STAT. § 18–4–405 and that they are entitled to recover treble damages, attorney fees and costs, under the terms of that statute.

### 1) The Judson Claim

The Judson claim involves interests in three properties plus anticipated profits on two other deals that never took place. On all properties that Judson became involved

in, he did receive property interests. Any damages due to those properties not having the value that Judson expected are fully within the discretion of the fact finder and are not subject to calculation according to a fixed standard. Mr. Judson claims lost profits. Those claims are, of course, speculative and subject to discretion. The Judson claim is unliquidated.

### 2) The Parish Claim

The Parish claim is unliquidated in its entirety. It involves two properties which Mr. and Mrs. Parish acquired and later sold. Those claimed losses upon the sales and claims for lost anticipated profits are within the discretion of a finder of fact.

### 3) The Anglin Claim

The Anglin claim is unliquidated in its entirety. It involves a two unit duplex which Anglin acquired. Like the Parish claim, he claims losses on the sales of the units as well as lost profits. Both loss claims would be within the discretion of a fact finder and are not liquidated debts.

### 4) The Rivas Claim

The Rivas claim involves a loss with respect to a property which he actually acquired. As with previous such claims where a claimant actually received an interest in property but claims to have subsequently lost money on the property due to sale or foreclosure, the Court considers any such damage claims to be within the discretion of a fact finder and are unliquidated. The lost profit claim is unliquidated. Mr. Rivas' proof of claim states that $47,500.00 represents actual money fraudulently taken by Mr. Salazar. But the detail attached to the proof of claim is contradictory. It shows a $20,000.00 investment made by Mr. Rivas and also shows several payments by Salazar to Rivas which Salazar characterizes as return

on investment. The detail also shows a short-term loan from Salazar's business entity, Twin Peaks, to Rivas and subsequent repayment with interest to Salazar. Thus, the proof of claim and the attached detail do not provide the Court with sufficient information to determine the derivation of that $47,500.00 figure with any degree of certainty. Nor did Mr. Rivas' testimony clear up the confusion. The only thing that Mr. Rivas clearly remembered was that he did acquire a piece of real property with a $20,000.00 down payment, which he later sold. His memory with respect to other amounts paid to Salazar and payments made by Salazar back to him was far too sketchy and confused to provide the Court with information from which it could calculate any claim amount with sufficient certainty to consider it a liquidated amount. Consequently, the Court will categorize the Rivas claim as an unliquidated debt in its entirety.

### 5) The Ramirez Claim

This Claim was filed on behalf of Abel Ramirez by the same attorneys who represent the other Judson Creditors but it was not filed until last day of the hearing in this matter. The Court heard no evidence with respect to the Ramirez claim and the Judson Creditors' counsel made no argument with respect to that claim in their closing submission. Mr. Ramirez was scheduled as a creditor by the Salazars, but, like the other Judson Creditors, his claim was scheduled as unliquidated and disputed. The Ramirez proof of claim characterizes the debt as $44,500.00 for "Money stolen and lost profits." There is no attachment to the proof of claim that specifies the amount claimed for "money stolen" and the amount claimed for "lost profits." The attachments consist primarily of copies of checks and deposit slips.

The Court is unable to determine, from its review of the attachments to Mr. Ramirez claim, if any portion of that claim is could possibly be considered as a liquidated amount. Consequently, the Court will categorize the claim as an unliquidated claim.

### G. Treble Damages Under COLO.REV.STAT. § 18–4–405

As noted above, all of the Judson Creditors have asserted claims to treble damages under COLO.REV.STAT. § 18–4–405. The inclusion of such treble damages claims in a § 109(e) chapter 13 eligibility determination was the narrow issue that this Court addressed in the case of *In re Krupka,* 317 B.R. 432 (Bankr.D.Colo.2004). In that case, the Court noted that COLO. REV.STAT. § 18–4–405 defines the crime of theft very broadly. *Id.* at 437. The creditors argued, and the Court agreed, that allegations that the debtor had misappropriated proceeds from the creditors' investments met the definition of theft applicable to the Colorado civil theft statute and that those claimants were entitled to treble damages under that statute. *Id.* at 439. Furthermore, the Court did not interpret the language of COLO.REV.STAT. § 18–4–405 as giving the trial court discretion on the question of whether to award treble damages or not. The Bankruptcy Code's definition of what constitutes a debt is broad and encompasses an award of treble damages imposed under COLO.REV. STAT. § 18–4–405. *See Cohen v. de la Cruz,* 523 U.S. 213, 218, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998) (Treble damages award under New Jersey Consumer Fraud Act were included in the nondischargeable debt under § 523(a)(2)).

In *Krupka* there was only a slight difference between the amounts reflected in the proofs of claim and the amounts acknowledged by Mr. Krupka to have been misappropriated. One of the three claims had been finally adjudicated and reduced to a judgment, which included treble damages. In the two claims where a court had not already made a treble damage award, adversary actions were pending with respect to those claims. In both cases, discovery sanction orders had been entered that had the effect of establishing the amounts of the damages at issue. As a consequence, the Court was able to apply Colorado's Civil Theft Statute to those liquidated damage amounts. Here, by contrast, the Court finds none of the claims to contain liquidated damage amounts, therefore, it finds no liquidated damages to which it may apply COLO.REV.STAT. § 18–4–405.

### III. CONCLUSION

The *Judson Creditors' Renewed Objection to Debtors' Amended Chapter 13 Plan* raised issues not only with respect to plan confirmation, but also with respect to the Debtors' chapter 13 eligibility. The claims asserted by those creditors far exceeded the chapter 13 unsecured debt limitation stated in § 109(e). As a result, the Court elected to conduct a hearing on the eligibility issue before it considers the confirmation issues. It is inappropriate, at the eligibility stage of the proceedings, for the Court to fully adjudicate claims. Instead, it relies primarily upon the Debtors' schedules and upon proofs of claim. While the requirement that debt must be noncontingent in order to count toward the § 109(e) is relatively straightforward, the determination of whether or not a debt is liquidated is somewhat more complex. The Court relies on the traditional formulation of a liquidated debt as being a debt for a sum-certain that is subject to simple calculation. For the reasons stated, the Court did not consider three of the Judson Creditor claims, which it deemed to have been asserted in bad faith. Upon examination of the remaining claims made by the Judson Creditors, the Court finds all of

those claims to be unliquidated in nature because there is no certainty with respect to the measure of damages. Because those unliquidated claims may not be considered in the Court's eligibility calculation under § 109(e), and because the remaining liquidated claims total well below the § 109(e) eligibility threshold, the Court finds that the Salazars are eligible for relief under chapter 13. Therefore, it is

**ORDERED** that admission of all Judson Creditor exhibits bearing triple letters (i.e. "AAA") is DENIED. It is further

**ORDERED** that the *Judson Creditors' Renewed Objection to Debtors' Amended Chapter 13 Plan* is DENIED, but only to the extent that it objects to the Debtors' eligibility for chapter 13 relief.