## In re F. Jeffrey KRUPKA, fmem Krupka and Assoc., LLC, fmem Platinum Financial Fund, LLC, Debtor.

### No. 04–25684 HRT.

United States Bankruptcy Court,
D. Colorado.

Nov. 19, 2004.

---

F. Kelly Smith, Denver, CO, for Debtor.

### *ORDER GRANTING MOTION*
### *TO DISMISS CHAPTER*
### *13 CASE*

HOWARD R. TALLMAN, Bankruptcy Judge.

This case comes before the Court on the Motion to Dismiss Chapter 13 Case [the "Motion"] filed by Kathleen D. Crane, Stephen Lynton, Julia Lynton and Richard D. Lynton [the "Movants"].

The Court held a hearing on the Motion on August 5, 2004, and continued the matter to September 30, 2004. The Court allowed the parties to file briefs addressing the chapter 13 debt limitations, as applied to the facts of this case, and whether this new chapter 13 case may proceed simulta-

neously with the Debtor's prior chapter 7 bankruptcy case number 03–24034.

At the hearings, the Debtor appeared through counsel F. Kelly Smith. The Chapter 13 Trustee, Sally Zeman, appeared through counsel Taya Sweeden. Kathleen D. Crane, Stephen Lynton and Julia Lynton appeared through counsel Richard D. Lynton. Richard D. Lynton appeared *pro se*.

### Facts

1. On July 18, 2003, the Debtor filed a voluntary petition under chapter 11. The case was docketed as case number 03–24034–EBB.

2. On October 6, 2003, case number 03–24034–EBB was converted to a case under chapter 13.

3. On November 10, 2003, case number 03–24034–EBB was converted to a case under chapter 7.

4. On November 14, 2003, it was ordered that the Debtor's individual case number 03–24034–EBB would be jointly administered with chapter 7 cases filed by two related entities and that all three cases would be reassigned to this Court. The related cases were filed by Krupka and Associates, LLC, and Platinum Financial Fund, LLC, and were docketed as case numbers 03–24027–HRT and 03–24029–SBB respectively.

5. On February 13, 2004, a Notice of Possible Dividend was sent to creditors in the jointly administered cases.

6. On June 16, 2004, the Debtor received his discharge.

7. The jointly administered cases are still open so that the chapter 7 trustee may administer estate assets.

8. The adversary case of *Anthony John Palombo, Vikki L. Palombo and A.R. Tech Services v. F. Jeffrey Krupka,* case number 03–1924–ABC, was filed on September 11, 2003, seeking a judgment of nondischargeability of debt against the Debtor. That case was tried on July 9, 2004, and judgment was rendered on August 13, 2004, finding that the debt in question is dischargeable.

9. The adversary case of *Kathleen D. Crane v. F. Jeffrey Krupka,* case number 03–2068–HRT, was filed on November 21, 2003, seeking a judgment of nondischargeability of debt. The current chapter 13 case was filed on the eve of trial in that adversary proceeding and it is currently being held in abeyance pending the resolution of the Debtor's eligibility for chapter 13 relief.

10. The adversary case of *Stephen Lynton and Julia Lynton v. F. Jeffrey Krupka,* case number 03–2069–SBB, was filed on November 21, 2003, seeking a judgment of nondischargeability of debt. That adversary proceeding had been set for trial on August 25, 2004, but is currently being held in abeyance pending a the resolution of the Debtor's eligibility for chapter 13 relief.

11. The adversary case of *Richard Lynton v. F. Jeffrey Krupka,* case number 03–2144–ABC, was filed on December 30, 2003, seeking a judgment of nondischargeability of debt. That adversary proceeding is currently being held in abeyance pending a the resolution of the Debtor's eligibility for chapter 13 relief.

12. On July 21, 2004, the Debtor filed this chapter 13 case.

13. The Debtor has scheduled noncontingent, liquidated, unsecured debts as follows on his Amended Schedule F, filed on September 24, 2004:

| CREDITOR | DEBT AMOUNT |
| --- | --- |
| Kathleen Crane | $ 34,697.45 |
| Julia Lynton | $ 15,493.85 |
| Richard D. Lynton | $ 53,002.74 |
| Stephen Lynton | $ 42,040.93 |
| Robert M. Singer, Trustee of the Robert M. Singer Trust | $ 50,716.67 |
| Robert M. Singer | $ 52,104.17 |
| **Total** | **$248,055.81** |

14. Proofs of claim have been filed in the case as follows. All were filed as unsecured claims:

| CREDITOR | CLAIM AMOUNT |
| --- | --- |
| Kathleen Cran | $104,092.35 |
| Julia Lynton | $ 46,481.55 |
| Richard D. Lynton | $ 53,092.74 |
| Stephen Lynton | $140,808.15 |
| Robert M. Singer, Trustee of the Robert M. Singer Trust | $ 50,716.67 |
| Robert M. Singer, Trustee of the Robert M. Singer Trust | $ 52,104.17 |
| **Total** | **$447,295.63** |

15. The claim of Richard D. Lynton has been fully adjudicated and reduced to judgment in state court.

16. The claims of Kathleen Crane, Julia Lynton and Stephen Lynton have not been adjudicated. All three claimants initially asserted their claims in state court actions. Those suits were stayed as a result of the filing of the Debtor's prior chapter 7 bankruptcy case. The same claims were asserted in the adversary actions, described above, that have been filed in that chapter 7 case. All three claimants filed proofs of claim for actual damages plus additional damages under COLO. REV. STAT. § 18–4–405. That statute allows the trebling of damages for actions that constitute civil theft.

17. Kathleen Crane claims actual damages in the amount of $34,697.45 and additional damages under COLO. REV. STAT. § 18–4–405 in the amount of $69,394.90.

18. Julia Lynton claims actual damages in the amount of $15,493.85 and additional damages under COLO. REV. STAT. § 18–4–405 in the amount of $30,987.70.

19. Stephen Lynton claims actual damages in the amount of $46,936.05 and additional damages under COLO. REV. STAT. § 18–4–405 in the amount of $93,872.10.

### *Discussion*
### *11 U.S.C. § 109(e) Debt Limitations*

Title 11 U.S.C. § 109(e) sets the debt limits that the Debtor must meet in order for him to be eligible for relief under chapter 13. His total secured debts must be less than $922,975.00 and his total unsecured debts must be less than $307,675.00. Those scheduled debts must be *noncontingent* and *liquidated.*

There is no dispute in this case that the Debtor's secured debts fall well below the threshold set by § 109(e). The dispute centers on the Debtor's unsecured debts. He scheduled noncontingent, liquidated, unsecured debts in the total amount of $248,055.81. The scheduled debts owed to the Movants total $145,234.97. However, the Movants' filed proofs of claim total $344,474.79. The Movants' claims are based on alleged misrepresentations and breaches of fiduciary duties committed by the Debtor directly and through business entities which he controlled. The total of all filed unsecured proofs of claim is $447,295.63.

Not surprisingly, the Debtor's version of his obligations puts the total of his unsecured debts well below the limit established by § 109(e). The Movants' version of those same debts puts the total well above the limitation and would eject the Debtor from this chapter 13 proceeding.

The difference between the Debtor's figures and the Movants' figures constitutes the additional or punitive damages which are available to the Movants if they should be successful in their various causes of action against the Debtor. That difference highlights the narrow issue that is before the Court:

> whether punitive damages available to the claimants in their, as yet unadjudicated, causes of action against the Debtor may be considered under 11 U.S.C. § 109(e) to determine the Debtor's eligibility for chapter 13 relief.

### Noncontingent, Liquidated Claims

█ Richard Lynton's claim was reduced to judgment prior to the filing of the current bankruptcy case. That state court ruling included an award of treble damages. In his case, there is no question as to his claim's status as a noncontingent, liquidated debt. However, the remaining Movants' claims have not been adjudicated. At first blush, it might appear that a claim that has not been finally adjudicated is still a contingent, unliquidated claim such that it cannot be considered in the chapter 13 eligibility calculation under § 109(e). But such is not the case.

█ "[I]t is generally agreed that a debt is contingent if it does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy." *Mazzeo v. U.S. (In re Mazzeo)*, 131 F.3d 295, 303 (2nd Cir.1997) (citing *In re Knight*, 55 F.3d 231, 236 (7th Cir.1995); *Nicholes v. Appleseed (In re Nicholes)*, 184 B.R. 82, 88 (9th Cir. BAP 1995); *Brockenbrough v. Commissioner*, 61 B.R. 685, 686–87 (W.D.Va.1986); *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex.1980)); *see also In re Hanson*, 275 B.R. 593, 596 (Bankr.D.Colo. 2002); *In re Reader*, 274 B.R. 893, 896 (Bankr.D.Colo.2002).

All of the Movants' claims are based upon investment transactions that they entered into with business entities controlled by Krupka. All of the Movants had filed state court actions asserting their claims prior to the filing of the bankruptcy petition. Mr. Krupka does not appear to contest the fact that the events upon which the Movants' claims are based occurred prior to the bankruptcy petition. The contingency which Mr. Krupka does vigorously assert relates to treble damages, which the Court will discuss in some detail.

█ A debt is liquidated, regardless of whether or not the Debtor disputes the debt, if the amount of the debt is capable of being readily ascertained. *Geary v. U.S. (In re Geary)*, 55 Fed.Appx. 806, 808 (9th Cir.2003); *Slack v. Wilshire Ins. Co. (In re Slack)*, 187 F.3d 1070, 1073 (9th Cir.1999); *In re Mazzeo*, 131 F.3d 295 at 304; *U.S. v. Verdunn (In re Verdunn)*, 89 F.3d 799, 802–803 (11th Cir.1996); *In re Knight*, 55 F.3d at 235; *In re Hanson*, 275 B.R. at 596–97; *In re Reader*, 274 B.R. at 896.

The claims of the Movants are liquidated. In fact, there are but slight variations in the amounts of actual damages claimed by the Movants and the amounts scheduled by Mr. Krupka. The Court's ultimate determination turns on whether the treble damages under COLO. REV. STAT. § 18–4–405 qualify as part of the Movants' "readily ascertainable" claims against the Debtor.

*Treble Damages Under Colorado Statutes*

The state statute in question is Colo. Rev. Stat. § 18–4–405. That statute addresses parties' rights in stolen property and reads as follows:

All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. *In any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees;* but monetary damages and attorney fees shall not be recoverable from a good-faith purchaser or good-faith holder of the property.

Colo. Rev. Stat. § 18–4–405 (emphasis added).

It is evident from a reading of the statutory language that an owner of stolen property may receive the award of treble damages from the perpetrator of the crime only upon proving that the defendant obtained the property through "theft, robbery, or burglary." Colo. Rev. Stat. § 18–4–405. Those are crimes whose elements are defined in the Colorado Criminal Code. The crime of burglary requires a perpetrator's unlawful presence inside a building or other occupied structure for the purpose of committing a crime. Colo. Rev. Stat. §§ 18–2–202 and 18–4–203. The crime of robbery involves an unlawful taking by means of threats, force or intimidation. Colo. Rev. Stat. § 18–4–301. There are no allegations in the Movants' claims that could amount to the crimes of burglary or robbery. The crime of theft is defined by the statute as follows:

A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or

(b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; or

(c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit; or

(d) Demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.

Colo. Rev. Stat. § 18–4–401.

In Colorado, the crime of theft is broadly defined and is intended to encompass several technically distinct crimes. The following statutory language makes it abundantly clear that Colorado law no longer recognizes those technical distinctions:

If any law of this state refers to or mentions larceny, stealing, embezzlement (except embezzlement of public moneys), false pretenses, confidence games, or shoplifting, that law shall be interpreted as if the word "theft" were substituted therefor; and in the enactment of sections 18–4–401 to 18–4–403 it is the intent of the general assembly to define one crime of theft and to incorporate therein such crimes, thereby removing distinctions and technicalities which previously existed in the pleading and proof of such crimes.

Colo. Rev. Stat. § 18–4–403. As a consequence, the category of crimes to which the treble damages provisions of Colo. Rev. Stat. § 18–4–405 applies is equally broad.

### The Lynton and Crane Proofs of Claim

The proofs of claim filed by Stephen Lynton, Julia Lynton, and Kathleen Crane all incorporate by reference the adversary actions which those parties have filed and which are pending in the Debtor's chapter 7 bankruptcy case. Kathleen Crane is the plaintiff in adversary number 03–2068–HRT; Stephen Lynton and Julia Lynton are plaintiffs in adversary number 03–2069–SBB.

The Debtor, operating through business entities which he controlled, was in the business of originating or acquiring loans backed by real estate or business assets and selling interests in those investments to private investors.

The claim filed by Kathleen Crane is based upon her purchase of an interest in an investment known as the Flores Note. Crane was entitled to receive a portion of each payment made on the note. She alleges that the Debtor misappropriated the proceeds of an early pay-off of that note to his own use and made misrepresentations to her in furtherance of his diversion of those proceeds.

Key facts in the adversary proceeding underlying Ms. Crane's claim have been established. This Court entered a discovery sanction order, dated June 1, 2004, in adversary number 03–2068–HRT, which established, among other facts, that the Debtor had appropriated proceeds from the payoff of the Flores Note to his own use and benefit and that those proceeds should have been paid to Ms. Crane. The discovery sanctions were imposed by the Court due to a total failure of the Debtor to respond to the Ms. Crane's discovery requests, including requests for admissions. Ms. Crane documented numerous unsuccessful attempts to elicit a response from the Debtor in her motion for sanctions under Fed. R. Civ. P. 37.[1] Even after the sanctions motion was filed, the Debtor failed to cooperate with his attorney to make any meaningful response to that motion. The Debtor received every opportunity to cooperate with discovery before that sanctions order was entered.

The claim filed by Stephen Lynton and Julia Lynton is based upon interests which the Lyntons purchased in two different investments: the Cambridge Investment and the Ortiz Investment. Both investments involved real estate mortgages which were later foreclosed upon. It is alleged that the Debtor, through his companies, substituted stock investments for the Cambridge Investment after the underlying real estate mortgage was foreclosed and later misappropriated proceeds from those stock investments. The Lyntons further allege that Krupka misappropriated a portion of the payoff due to them after the real estate mortgage underlying the Ortiz Investment was foreclosed and the real property was sold.

Just as in Ms. Crane's adversary proceeding, Judge Brooks entered a discovery sanction order dated July 12, 2004, in adversary number 03–2069–SBB. That order established, among other facts, that the Debtor had appropriated to himself, and his family, proceeds of the sale of stock that should have been distributed to the Lyntons. Again, the Debtor failed to cooperate with his attorney to provide discovery responses, or even to respond to the sanctions motion.

---

1. Made applicable to this adversary proceed-    ing by Fed. R. Bankr P. 7037.

The Court finds that both cases make allegations of actions by Mr. Krupka which constitute theft under the broad definition contained in the Colorado statutes and that, through the Debtor's total failure to participate in his own defense of those actions, key facts supporting those allegations have been conclusively established. As a consequence, the Court finds that an award of treble damages under COLO. REV. STAT. § 18–4–405 would follow successful prosecution of the claims asserted by Kathleen Crane, Julia Lynton and Stephen Lynton in their respective adversary cases. Furthermore, the Court finds that, owing to the Debtor's failure to defend those actions, it is highly likely that Ms. Crane and the Lyntons will be successful in those cases.

### The Claim for Treble Damages is Non-contingent and Liquidated

The Debtor argues that the claim for treble damages is contingent because those damages have not been awarded by a court. But, as noted above, if all of the conditions leading to the award of treble damages have already occurred, then the award of those damages is not contingent. Furthermore, if those damages are capable of being readily ascertained, then they are liquidated.

■ The Court might be inclined to view the award of treble damages as contingent, and not a necessary component of the Crane and Lynton claims, if that award were discretionary with the trial court. But, the Court does not read the language of COLO. REV. STAT. § 18–4–405 as implying that an award of treble damages is discretionary. While it is true that the statute does not say that the *court shall* award treble damages, neither does it say that the *court may* award treble damages. Instead, it says that the *"owner* [of the stolen property] *may recover* ... three times the amount of the actual damages

....." Because the language used speaks in terms of what the owner may recover as opposed to what the court may award, this Court does not believe that the statutory language supports the argument that discretion lies with the trial court to either award treble damages or not as it may deem appropriate. In *Itin v. Ungar*, the Colorado Supreme Court said "it appears from an analysis of the wording of the statute that the General Assembly intended for this statute to require proof of the commission of a criminal act, but not proof of a prior conviction of the defendant as a condition for recovery of treble damages." 17 P.3d 129, 133 (Colo.2000). While that case did not address the precise issue that is before this Court, throughout the case speaks of an award of treble damages following proof that the offense of theft had been committed. This Court finds no discussion in *Ungar* or any other case that leads it to believe that the Colorado state courts view the treble damages provision as discretionary.

■ The Court believes that a good faith assertion of a claim, without more, is sufficient to require the Court to take the full amount of the asserted claim into account when determining eligibility for chapter 13 relief. *In re Reader*, 274 B.R. 893, 898 (Bankr.D.Colo.2002). Here, however, key elements of the Plaintiffs' cases have been established in both the Lynton and Crane adversary matters. Those facts were established by the Debtor's total disregard of his responsibility to defend his position in the adversary litigation. The establishment of those key facts, which underlie the Lynton and Crane claims, satisfies the Court that proofs of claim filed by Stephen Lynton, Julia Lynton and Kathleen Crane have asserted credible claims that meet the Colorado definition of theft and for which treble damages are available to those claimants under Colora-

do law. As a consequence, the Court must use the full amounts of the filed proofs of claim, including the claimed treble damages, in making its calculation under § 109(e).[2]

### Conclusion

Because it is appropriate to consider the inclusion of the treble damages portion of the Lynton and Crane claims in the Court's eligibility calculation, the Court finds that the total of noncontingent, liquidated, unsecured claims asserted against the Debtor is $447,295.63. This case was filed on July 21, 2004. On that date, the § 109(e) limitation on unsecured debt in a chapter 13 proceeding was $307,675.00. Because Mr. Krupka has noncontingent, liquidated, unsecured debt in excess of that limitation, he is ineligible for chapter 13 relief.

Because the Court will dismiss this case based upon the § 109(e) debt limitations, it need not address the issue of whether or not this case may proceed simultaneously with the Debtor's open chapter 7 case. Therefore, it is

**ORDERED** that the Motion to Dismiss Chapter 13 Case filed by Kathleen D. Crane, Stephen Lynton, Julia Lynton and Richard D. Lynton is GRANTED.

---

**2.** The Crane and Lynton claims involve components of actual damages and penalty damages. The Court notes that, in the context of distribution of estate assets, courts have frequently subordinated claims for penalties to other unsecured claims under § 510(c). *See, e.g. Matter of Virtual Network Services Corp.,* 902 F.2d 1246 (7th Cir.1990) (equitable subordination of IRS tax penalties). But, while a distinction between actual and punitive damages may have an effect on distribution issues, § 109(e) does not allow for any such distinction between those types of damages in the chapter 13 eligibility calculation.