In re David Allan DORLAND, f/o/d/s Ben Do Volt Construction, LLC, Debtor.

Bemas Construction, Inc., Plaintiff,

v.

David Allan Dorland, f/o/d/s Ben Do Volt Construction, LLC, Defendant.

In re Matthew Lloyd Varholdt, f/o/d/s Ben Do Volt Construction, LLC, o/d/s Clear Creek Civil, Inc., Debtor.

Bemas Construction, Inc., Plaintiff,

Matthew Lloyd Varholdt, f/o/d/s Ben Do Volt Construction, LLC, o/d/s Clear Creek Civil, Inc.

Bankruptcy Nos. 05–28508–SBB, 05–28506–SBB. Adversary Nos. 05–01861–SBB, 05–01862–SBB.

United States Bankruptcy Court, D. Colorado.

March 23, 2007.

Jonathan L. Madison, Wolf & Slatkin, P.C., Denver, CO, for Bemas Construction, Inc.

Stephen E. Berken, Denver, CO, for David Dorland and Matthew Lloyd Varholdt.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court for a trial regarding the Complaint filed by Bemas Construction ("Plaintiff") against David Allan Dorland, f/o/d/s Ben Do Volt Construction, LLC ("Defendant Dorland") and Matthew Lloyd Varholdt, f/o/d/s Ben Do Volt Construction, LLC, o/d/s Clear Creek Civil, Inc. ("Defendant Varholdt") (together Defendant Dorland and Defendant Varholdt shall be referred to as "Defendants"). The trial was conducted on August 11, 2006. The Court, having reviewed the pleading, heard testimony, received exhibits, and reviewed the Court's file in this matter, makes the following findings of fact, conclusions of law and Order.

## I. *Summary*

This is a case in which the Plaintiff, a creditor and general contractor, seeks a judgment against its former subcontractor, the Defendants/Debtors. Specifically, this matter was brought by a general contractor, Plaintiff against the owners of two companies, Defendant Varholdt and Defendant Dorland, who subcontracted on a con-

struction project. The Plaintiff is seeking this Court's determination that the Defendants violated COLO.REV.STAT. § 38–26–109 (the "Public Works Contractors' Trust Fund Statute"). The Plaintiff further seeks treble damages against Defendants in accord with the Colorado Criminal Code, COLO.REV.STAT. § 14–4–401 *et seq.* ("Colorado Criminal Code"), specifically, COLO.REV.STAT. § 18–4–405, and a determination that the debts arising therefrom are nondischargeable under 523(a)(4).

For the reasons set forth below, the Court concludes that Defendant Varholdt, only, violated the Public Works Contractors' Trust Fund Statute. The Court, however, declines to award treble damages under the Public Works Contractors' Trust Fund Statute. Consequently, judgment shall enter in favor of Plaintiff and against Defendant Varholdt, only, in the amount of $134,287.32, together with post-judgment interest on that amount at the statutory rate of 8% per annum from the date of the judgment until paid. The Court further finds and concludes that the judgment entered herein is nondischargeable under 11 U.S.C. § 523(a)(4).

## II. *Findings of Fact*

The Court makes the following findings of fact based upon those facts stipulated to by the parties and from those matters adduced during the trial of this matter.

### A. Background

Plaintiff is involved in the general construction business and entered into a public works contract with CH2MHill to perform certain work at the Jefferson County Airport ("Project").

On August 25, 2004, Bemas entered into a subcontract ("Subcontract") with BenDo-Volt Construction, LLC ("BDV") for a portion of the work to be performed at the Project.[1]

In the fall of 2004, Defendant Varholdt advised Bemas, through Bemas's project manager, Mike Bussey, that BDV desired to assign the Subcontract to a new company owned and operated by substantially the same owners of BDV. On or about December 13, 2004, Bemas and Clear Creek Civil, Inc. ("Clear Creek") entered into an Assignment of Standard Subcontract Agreement ("Assignment") in which Clear Creek, as assignee, accepted all of the terms and conditions of the Subcontract.[2]

BDV and Clear Creek were owned and operated by the same individuals. Based on the evidence before the Court, this Court concludes that Defendant Varholdt controlled all financial, administrative and operational decisions involving Clear Creek.[3]

All of the work to be completed by Clear Creek, and for which Clear Creek's suppliers supplied material and equipment, related only to what was known as Schedule I and Schedule II of the Project.

In accordance with the Subcontract as assigned, Bemas paid Clear Creek the sum of $246,895.74 comprised of two checks, one check dated January 28, 2005, in the amount of $80,204.85 and another check dated February 18, 2005, in the amount of $166,690.89.[4]

After receiving the payments referenced above, Clear Creek did not pay several of its material and equipment suppliers on the Project, including Carder Concrete Products Co. ("Carder"), Rocky Mountain Ready Mix Company ("Rocky Mountain"),

---

1. Plaintiff's Exhibit 2.

2. Plaintiff's Exhibit 3.

3. Plaintiff's Exhibit 38.

4. Plaintiff's Exhibits 8, 9, and 39.

and Power Motive Corporation ("Power Motive").

Clear Creek failed to complete the work on the Project. Defendant Varholdt testified that Clear Creek could not complete its work because it had run out of money and had no further operating capital. Bemas, as principal, and Travelers Casualty and Surety Company of America, as compensated surety, provided a payment bond, pursuant to Colo.Rev.Stat. § 38–26–105, for the benefit of unpaid subcontractors, and material and rental equipment suppliers for the Project.[5]

On January 31, 2005, Clear Creek deposited a check it received from Bemas, in the amount of $80,204.85 into its account with First Bank.[6] On February 17, 2005, Clear Creek deposited another check it received from Bemas, in the amount of $166,690.89, into its account with First Bank.[7] During the time period from January 28, 2005 through August 3, 2005, Clear Creek made over 200 individual payments to various individuals and entities from the bank account where the Bemas trust funds were deposited. Of the over 200 payments made to various individuals and entities, only one payment was made to Power Motive in the amount of $8,000.00 and only one payment was made to Carder in the amount of $10,069.80.[8]

### B. Components of Plaintiff's Claim Related to Carder

Carder was a material supplier to Clear Creek on the Project. Carder was not paid by Clear Creek for the materials it supplied on the Project. Carder submitted invoices to Clear Creek, which remained unpaid.[9] Despite demands for payments being made, Clear Creek did not pay and, consequently, Carder informed Bemas of Clear Creek's failure to pay and provided Bemas with copies of the unpaid invoices. On April 4, 2005, Carder filed a Verified Statement of Claim with Jefferson County, Colorado, in accordance with Colo. Rev.Stat. § 38–26–107, asserting that it was owed $90,196.00.[10]

In order to obtain the release of its retainage from Jefferson County and to forestall any claim on the payment bond, Bemas paid Carder $90,196.00.[11] Carder released its Verified Statement of Claim with Jefferson County thereafter.[12]

### C. Components of Plaintiff's Claim Related to Rocky Mountain

Rocky Mountain was a material supplier to BDV and to Clear Creek. Rocky Mountain was not paid by Clear Creek for the materials it supplied on the Project. Rocky Mountain submitted invoices to Clear Creek, which remained unpaid.[13] Despite demands for payments being made, Clear Creek did not pay the sums that remained unpaid.[14]

On April 22, 2005, Rocky Mountain filed a Verified Statement of Claim with Jefferson County, Colorado in accordance with Colo.Rev.Stat. § 38–26–107, asserting that it was owed $14,188.44. In order to obtain the release of its retainage from Jefferson County and to forestall any claim on the payment bond, Bemas negotiated with and

**5.** Plaintiff's Exhibit 41.

**6.** Plaintiff's Exhibit 39 and Defendants' Exhibit A.

**7.** Plaintiff's Exhibit 39 and Defendants' Exhibit A.

**8.** Plaintiff's Exhibit 33.

**9.** Plaintiff's Exhibit 13.

**10.** Plaintiff's Exhibit 14.

**11.** Plaintiff's Exhibit 15.

**12.** Plaintiff's Exhibit 16.

**13.** Plaintiff's Exhibit 21.

**14.** Plaintiff's Exhibit 19.

paid Rocky Mountain $12,000.00 in full settlement of the Verified Claim and any possible bond claims.[15]

### D. Components of Plaintiff's Claim Related to Power Motive

Power Motive was an equipment rental company that supplied Clear Creek with equipment for use on the Project. Power Motive was not paid by Clear Creek for the equipment it supplied on the Project. Power Motive submitted invoices to Clear Creek which remained unpaid.[16] Despite demands for payments being made, Clear Creek did not pay the sums that remained unpaid.

On April 22, 2005, Power Motive filed a Verified Statement of Claim with Jefferson County, Colorado in accordance with COLO. REV.STAT. § 38–26–107, asserting that it was owed $40,333.88. In order to obtain the release of its retainage from Jefferson County and to forestall any claim on the payment bond, Bemas negotiated with and paid Power Motive $32,091.32 in full settlement of the Verified Claim and any possible bond claims.[17] Power Motive released its Verified Statement of Claim and waived any right to file a bond claim on the Project.[18]

### III. *Pursuit of a Claim against Defendant Dorland*

In reviewing the evidence and testimony at trial, very little evidence was produced by the Plaintiff as against Defendant Dorland. In fact, Plaintiff's written and filed Closing Argument (Docket # 55) does not mention Defendant Dorland and the prayer for relief contained therein only refers to Defendant Varholdt. It would seem that Plaintiff has, in effect, dropped its

claim(s) against Defendant Dorland. Consequently, the focus of this opinion will relate to the conduct of Defendant Varholdt, only.

### IV. *Issues*

The issues before this Court are:

(1) Whether Plaintiff has standing to assert a claim under the Public Works Contractors' Trust Fund Statute.

(2) If the Plaintiff has standing to assert a claim under the Public Works Contractors' Trust Fund Statute, whether Defendant Varholdt violated the Statute.

(3) If Defendant Varholdt violated the Public Works Contractors' Trust Fund Statute, are treble damages to be awarded in accord with COLO.REV. STAT. § 18–4–405.

(4) Whether any monetary judgment in favor of the Plaintiff for violation of the Public Works Contractors' Trust Fund Statute and/or treble damages awarded in accord with COLO.REV. STAT. § 18–4–405 are nondischargeable under 11 U.S.C. § 523(a)(4).

### V. *Discussion*

#### A. Standing

■ The Court concludes that the Plaintiff has standing to assert a claim under the Public Works Contractors' Trust Fund Statute.

First, this Court concludes that Plaintiff *can* assert a claim as a general contractor. In *Stetson Ridge Associates, Ltd. v. Walker (In re Walker),*[19] the United States District Court for the District of Colorado, *in examining COLO.REV.STAT. § 38–22–127(1),* discussed the importance and significance

---

15. Plaintiff's Exhibit 23 and 24.

16. Plaintiff's Exhibit 27.

17. Plaintiff's Exhibit 31.

18. Plaintiff's Exhibit 32.

19. *In re Walker,* 325 B.R. 598 (D.Colo.2005).

of statutorily created trust relationships. There, the Court noted that express and technical trusts imposed by state law are to protect certain beneficiaries thereunder. In *Walker,* the Court concluded that a key purpose of CoLo.REV.STAT. § 38–22–127(1) was to protect property owners who were the principal beneficiary of the statutory trust.[20] The Court stressed that the beneficiaries of the statute may include a broader group of persons than just the payees themselves, and that the beneficiaries may include the owner of the project and the general contractor.[21]

Second, the Court does not find Defendant's reliance on *Fowler & Peth, Inc. v. Regan (In re Regan)*[22] persuasive, in this context, nor the proposition for which it stands, to be good law any more.[23] Defendants rely on *Regan* for the proposition that, because Plaintiff no longer has a potential lien [24] under the Trust Fund Statute, there is no standing to assert a claim consistent with—or analogous to—the reasoning in this iteration of *Regan* referred to by the Defendants, the United States

District Court for the District of Colorado, held, in analyzing CoLo.REV.STAT. § 38–22–127, that a "fiduciary" relationship was not created between contractor and unpaid materialman who had not filed a lien and could no longer do so.[25] The *Regan* decision by the United States District Court of Colorado was appealed to the Tenth Circuit. The Tenth Circuit certified this question to the Colorado Supreme Court. The Colorado Supreme Court has concluded, upon that certification of the question by the Tenth Circuit Court of Appeals, that a trust fund claimant is not required to have a properly perfected lien, or still be able to perfect a lien to seek access to money held in trust under CoLo.REV.STAT. § 38–22–127.[26]

### B. Defendant Varholdt Violated the Public Works Contractors' Trust Fund Statute

1. *The Requirements of CoLo.REV.STAT. 38–26–109(1)*

CoLo.REV.STAT. 38–26–109(1)(a) and (b) provides:

---

**20.** *Id.* at 602.

**21.** *Id.* at 604. On a certification of a question of law to the Supreme Court of Colorado, from the United States Court of Appeals, the Colorado Supreme Court held, in the context of CoLo.REV.STAT. § 38–22–127(1), that "property owners are direct beneficiaries of the Trust Fund Statute to prevent the possibility of having to make double payments." *Fowler & Peth, Inc. v. Regan (In re Regan),* 151 P.3d 1281, 1286 (Colo.2007) (en banc).

**22.** 326 B.R. 175, 179 (D.Colo.2005), rev'd. 477 F.3d 1209 (10th Cir.2007).

**23.** The version of *Regan* to which the Defendants rely has been reversed and remanded with directions to the District Court by *Fowler & Peth, Inc. v. Regan (In re Regan),* 477 F.3d 1209 (10th Cir.2007).

**24.** The Plaintiff notes that no liens *could* be filed against public property under *City of Westminster v. Brannan Sand & Gravel Co.,*

*Inc.,* 940 P.2d 393, 395–96 (Colo.1997) (en banc).

**25.** The District Court concluded that the general contractor may have had a lien on the properties coupled with a fiduciary relationship with the debtor-fiduciary only within the time allowed for filing and perfecting a mechanics' lien under CoLo.REV.STAT. §§ 38–22–109(5) and 110, which time had passed.

**26.** *Fowler & Peth, Inc. v. Regan (In re Regan),* 151 P.3d 1281, Case No. 06–SA286, slip op. at 21 (Colo. February 5, 2007) (en banc). Even if the Colorado Supreme Court were to have ruled in a contrary fashion, this Court concludes that there is a key distinction between CoLo.REV.STAT. 38–26–109 and CoLo.REV.STAT. § 38–22–127. That is, CoLo.REV.STAT. 38–26–109 provides that the verified statement must simply be "filed" or "may" be filed and the claim against a principal or surety must be "asserted" or "may" be asserted. The language of CoLo.REV.STAT. 38–26–109 and the extent of protection casts a very wide net.

(1) All funds disbursed to any contractor or subcontractor under any contract or project subject to the provisions of this article shall be held in trust for the payment of any person that has furnished labor, materials, sustenance, or other supplies used or consumed by the contractor in or about the performance of the work contracted to be done or that supplied laborers, rental machinery, tools, or equipment to the extent used in the prosecution of the work where the person has:

 (a) *Filed or may file* a verified statement of a claim arising from the project; or

 (b) *Asserted or may assert* a claim against a principal or surety under the provisions of this article and for whom or which such disbursement was made.[27]

■ The Public Works Contractors' Trust Fund Statute requires that all funds disbursed to any subcontractor on a public works project to be held in trust for the payment of any person that has furnished labor, materials, sustenance, or other supplies used or consumed by the contractor. Defendants assert that they are not required to hold money in trust because of the language contained in CoLo.REv.STAT. 38–26–109(2), which provides:

(2) The requirements of this section shall not be construed so as to require a contractor or subcontractor to hold in trust any funds that have been disbursed to him or her for any person that has furnished labor, materials, suste-

nance, or other supplies used or consumed by the contractor or his or her subcontractor in the performance of the work contracted to be done; supplied laborers, rental machinery, tools, or equipment to the extent used in the prosecution of the work; filed or may file a verified statement of a claim arising from the project; or asserted or may assert a claim against a principal or surety that has furnished a bond under the provisions of this article if:

 (a) The contractor or subcontractor has a good faith belief that the verified statement of a claim or bond claim is not valid; or

 (b) The contractor or subcontractor, in good faith, claims a setoff, the extent of such setoff.

2. *Burden of Proof under the Public Works Contractors' Trust Fund Statute (CoLo.REv.STAT. 38–26–109)*

With respect to the burden of proof required to prevail on a claim under the Public Works Contractors' Trust Fund Statute, this Court notes that there may be some countervailing viewpoints on this question.

■ The Court finds no case law addressing, specifically, the burden of proof in the context of the Public Works Contractors' Trust Fund Statute, itself. Nevertheless, where, as here, the matter is pursued as a *civil matter*, the civil burden of proof, that is, the preponderance of the evidence standard, is the proper standard.[28] Thus, the Court concludes that,

---

**27.** Emphasis added.

**28.** *Itin v. Ungar*, 17 P.3d 129, 135 n. 9 (Colo. 2000) (the Colorado Supreme Court noted that it has rejected the argument that the statutory remedy of treble damages requires the higher criminal burden of proof beyond a reasonable doubt, rather than the civil standard of preponderance of the evidence, even when the trebling of damages may, in part,

have a punitive impact on the debtor, as my occur with the application of CoLo.REv.STAT. § 18–4–405). It would appear that, in the context of a *criminal proceeding under CoLo. REv.STAT. 38–22–127*, the burden of demonstrating the essential elements of "theft" must be proven "beyond a reasonable doubt" *People v. Erickson*, 695 P.2d 804, 805 (Colo.App. 1984); *People v. Collie*, 682 P.2d 1208, 1210 (Colo.App.1983); *People v. Brand*, 43 Colo.

here, as this matter is being pursued as a civil matter, the requisite burden of proof under the Public Works Contractors' Trust Fund Statute is the preponderance of evidence standard, rather than the higher criminal burden of proof.

### 3. Plaintiff Has Demonstrated by a Preponderance of the Evidence That Defendant Varholdt Violated the Public Works Contractors' Trust Fund Statute

■ As set forth in the facts above, on January 31, 2005, Clear Creek deposited a check it received from Bemas, in the amount of $80,204.85 into its account with First Bank.[29] On February 17, 2005, Clear Creek deposited another check it received from Bemas, in the amount of $166,690.89, into its account with First Bank. During the time period from January 28, 2005 through August 3, 2005, Clear Creek made over 200 individual payments to various individuals and entities from the bank account where the Bemas trust funds were deposited. Of the over 200 payments made to various individuals and entities, only one payment was made to Power Motive in the amount of $8,000.00 and only one payment was made to Carder in the amount of $10,069.80.

Plaintiff has made an accounting for the funds disbursed to Clear Creek. Defendant Varholdt, however, has not accounted for the funds with respect to the Project.[30] The evidence presented at trial demonstrates that the following settlements were reached between the Plaintiff and the following material and equipment suppliers:

| | |
|---|---|
| Carder: | $ 90,196.00 |
| Rocky Mountain: | $ 12,000.00 |
| Power Motive: | $ 32,091.32 |
| Total: | $134,287.32 |

Plaintiff has met its burden of proof demonstrating that Defendant Varholdt failed to pay three of the material and equipment suppliers in a sum certain. The evidence reflects that Clear Creek and its person in charge of financial matters, Defendant Varholdt, failed to (1) account for the trust funds and (2) demonstrate that the funds were properly applied on the project.

### 4. The Exception for a Good Faith Belief that the Verified Statement of Claim or Bond is Not Valid

■ The evidence before the Court does not reflect—as Defendants assert—that the Defendants had a good faith belief that the verified statement of claim or bond was not valid. On the contrary, the evidence reflects that all three of Clear Creek's unpaid suppliers provided materials and equipment on the Project. The date of the final settlement for the Project was May 30, 2006. All three suppliers timely filed their Verified Statements of Claims in the spring of 2005.

Robert Lohne, formerly the Airport Projects Specialist and, now, the Airport Manager of Development for the Jefferson County Airport, testified at trial that Clear Creek's material and equipment suppliers timely and properly filed their Verified Statement of Claim with Jefferson County in accord with Colo.Rev.Stat. § 38–26–107.[31] Mr. Lohne further credibly testi-

App. 347, 348, 608 P.2d 817, 818 (Colo.App. 1979).

**29.** Plaintiff's Exhibit 39 and Defendants' Exhibit A.

**30.** In an unpublished opinion by the Honorable A. Brace Campbell, of the United States Bankruptcy Court for the District of Colorado, he concluded that, in the context of Colo. Rev.Stat. § 38–22–127(4), a defendant contractor or subcontractor must account for proper application of trust funds "for each project or contract," or face liability for breach of fiduciary duty. *In re Riley*, 2004 WL 2300460, *5 (Bankr.D.Dist.Col.2004).

**31.** Colo.Rev.Stat. § 38–26–107(1) provides:

Any person, copartnership, association of persons, company, or corporation that has furnished labor, materials, sustenance, or

fied that after the Verified Statements of Claims were received, the amounts claimed by each of the three suppliers were confirmed and withheld from Bemas in Jefferson County. By all accounts, there appears to be no evidence that (1) the Verified Statements of Claims were not valid or (2) the Defendants had a good faith belief that the verified statements of claims were not valid.

### 5. *The Exception for Claim of Setoff*

■ With respect to the claim of a setoff, Defendants assert that because Bemas Construction kept a percentage of funds it released to Clear Creek as a "retainage" to pay suppliers in the event that Clear Creek failed to do so, this constitutes a setoff under Colo.Rev.Stat. § 38–26–109(2)(b). Recently, the Colorado Court of Appeals addressed the issue of what constitutes a "setoff." [32] The Court stated:

> A setoff is defined as "[a] debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor." *Black's Law Dictionary* 1404 (8th ed.2004). A setoff is a counterclaim and is compulsory if it arises from the same subject matter or occurrences as the previous claim. "Whether a counterclaim is compulsory involves inquiry into the logical relationship between the opposing claims." In addition, a counterclaim

may be compulsory even though the evidence needed to establish it differs from the evidence needed to establish the other prior claim. [33]

In reviewing the Complaint filed herein and the Defendants' bankruptcy schedules, it does not appear that either Defendant listed a counterclaim for setoff as an affirmative defense or an asset in their schedules. Thus, there is an issue here whether the Defendants have any standing to assert a claim of setoff. The Court concludes that, as this case is presented, they do not have standing. Even if the claim for setoff was viable, the proper party in interest to bring such claim would have been Glen R. Anstine, the Chapter 7 Trustee, while the case was open (the cases are now closed).

The role and capacity of the trustee is defined in 11 U.S.C. § 323 as:

> (a) The trustee in a case under this title is the representative of the estate.
>
> (b) The trustee in a case under this title has capacity to sue and be sued.

Fed.R.Bankr.P. 6009 provides that, with respect to prosecution and defense of proceedings:

> [w]ith or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or pro-

---

other supplies used or consumed by such contractor or his or her subcontractor in or about the performance of the work contracted to be done or that supplies laborers, rental machinery, tools, or equipment to the extent used in the prosecution of the work whose claim thereto has not been paid by the contractor or the subcontractor, at any time up to and including the time of the final settlement for the work contracted to be done, which final settlement shall be duly advertised at least ten days prior thereto by publication of notice thereof at least twice in a public newspaper of general cir-

culation published in the counties wherein the work was contractor for and wherein such work was performed, may file with the board, officer, person, or other contracting body by home the contract was awarded a verified statement of the amount due and unpaid on account of such claim.

**32.** *Savage v. Williams Production RMT Co.,* 140 P.3d 67 (Colo.App.2005) (the court addressed the issue of "setoff" in the context of a royalties dispute between oil and gas lessees and lessors).

**33.** *Id.* at 72 (case citations omitted).

ceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.

Under persuasive, but not controlling case law from other jurisdictions, the courts have held that "[o]nly the trustee has the authority and the discretion to prosecute, defend and/or settle, if appropriate in its judgment, causes of action which existed at the time the order for relief was entered." [34] The author of the treatise, *Collier on Bankruptcy*, agrees and states that:

A debtor not in possession is given no authority under Rule 6009. Once a trustee has been appointed, the debtor has no further authority or standing to prosecute litigation on behalf of the estate. Until the trustee formally abandons the cause of action, the debtor has no authority or standing to proceed.[35]

Moreover, in accordance with 11 U.S.C. § 323(a), "the trustee is given full authority to represent the estate and to dispose of the debtor's property that makes up the estate." [36] The centerpiece of the trustee's duties under 11 U.S.C. § 704 is to, among other things, "dispose of all the asset of the estate so as to maximize a monetary return for distribution to the creditors of the Debtor," [37] Simply put, "the law is clear that a debtor's counterclaim is improper in a dischargeability proceeding and that the trustee in bankruptcy, and not the debtor, is the proper person to recover prepetition claims for the estate." [38] Here, the Defendants' claim of setoff is not properly taken.

■ The Court concludes that Defendant Varholdt has violated the Public Works Contractors' Trust Fund Statute and that any exception(s) to the Statute, as contained in Colo.Rev.Stat. § 38–26–109(2), are not applicable. Consequently, this Court concludes that Plaintiff was damaged by Clear Creek and Defendant Varholdt's violation of the Public Works Contractors' Trust Fund Statute in the sum of $134,287.32. The Court further concludes that Defendant Varholdt is personally liable because the evidence before the Court demonstrates that he was the person who controlled the financial decisions of Clear Creek.[39]

**34.** *Martin v. O'Connor (In re Martin)*, 201 B.R. 338, 343 (Bankr.S.D.N.Y.1996).

**35.** 10 *Collier on Bankruptcy* ¶ 6009.03[3] (Lawrence P. King ed., 15th ed. Rev.2004) (citations omitted). Here, because it does not appear that the setoff claim was listed by either Defendant in their schedules, the trustee most likely did not know of the putative claim.

**36.** 3 *Collier on Bankruptcy* ¶ 323.02[1].

**37.** *Martin*, 201 B.R. at 343.

**38.** *Gore v. Kressner (In re Kressner)*, 159 B.R. 428, 431 (Bankr.S.D.N.Y.1993) (court dismissed counterclaims asserted by a debtor in an adversary proceeding brought pursuant to 11 U.S.C. § 523); *see also Cable v. Ivy Tech State College*, 200 F.3d 467, 472 (7th Cir. 1999) (in a Chapter 7 liquidation, only the trustee has standing to prosecute or defend a claim belonging to the estate); *Rabin v. Simone (In re Simone)*, 105 B.R. 393, 394 (Bankr.S.D.Ohio 1989) (court concluded that because counterclaims existed at time of filing they were an asset of the debtor's estate that could only be pursued by the trustee); *Hancock Bank v. Jefferson (In re Jefferson)*, 73 B.R. 183, 185 (D.Miss.1986) (in an appeal from the bankruptcy court dismissing debtors' counterclaim brought with respect to a motion for relief from automatic stay, the district court concluded, that for the purposes of an appeal, the debtor is not a person aggrieved).

**39.** *See, e.g., Climax Molybdenum Co. v. Specialized Installers, Inc. (In re Specialized Installers, Inc.)* 12 B.R. 546, 551 (Bankr.D.Colo. 1981).

**C. Although this Court Concludes That Defendant Varholdt Violated the Public Works Contractors' Trust Fund Statute, the Court Is Not Required, Nor Shall It, Award Treble Damages under the Colorado Criminal Code Pursuant to COLO.REV.STAT. § 18–4–405.**

1. *Summary of "Theft" and Treble Damages under the Colorado Criminal Code, COLO.REV.STAT. § 18–4–405*

COLO.REV.STAT. § 38–26–109(4) provides that:

Any person who violates the provisions of [Colo.Rev.Stat. § 38–26–109(1) and (2)] of this section commits theft within the meaning of 18–4–401, C.R.S.

Thus, on a finding that the Defendant violated the Trust Fund Statute, an award of treble damages under the Colorado Criminal Code, as provided for by COLO.REV.STAT. § 18–4–405, seems warranted.

The Colorado State Theft Statute, COLO.REV.STAT. § 18–4–405, provides:

All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. In any such action, the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees; but monetary damages and attorney fees shall not be recoverable from a good-faith purchaser or good-faith holder of the property.

■ Under Colorado law, "theft" is broadly defined under COLO.REV.STAT. § 18–4–403, which provides:

If *any* law of this state refers to or mentions larceny, stealing, embezzlement (except embezzlement of public moneys), false pretenses, confidence games, or shoplifting, that law shall be interpreted as if the word "theft" were substituted therefor; and in the enactment of section 18–4–401 to 18–4–403 it is the intent of the general assembly to define one crime of theft and to incorporate therein such crimes thereby removing distinctions and technicalities which previously existed in the pleading and proof of such crimes.[40]

COLO.REV.STAT. § 18–4–401 specifically defines the components of "theft" as follows:

(1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or

(b) Knowingly uses, conceals, or abandons the thing of value in such matter as to deprive the other person permanently of its use or benefit; or

(c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit; or

(d) Demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.

2. *Burden of Proof under COLO.REV. STAT. 18–4–405*

■ The Court concludes that the requisite burden of proof for awarding treble damages under COLO.REV.STAT. 18–4–405 is the preponderance of evidence standard

---

**40.** Emphasis added.

rather than the higher burden used in criminal matters of beyond a reasonable doubt.[41]

### 3. *Distinguishing In re Krupka and In re Salazar from the Present Matter*

The Honorable Howard R. Tallman, Chief Bankruptcy Judge for this District, dealt with the treble damages statute, COLO.REV.STAT. § 18–4–405, in two separate cases: *In re Krupka*[42] and *In re Salazar.*[43] In *Krupka,* the creditors of the debtor moved to dismiss debtor's Chapter 13 case on the theory that the amount of the debtor's noncontingent, liquidated unsecured debt—inclusive of alleged treble damages resulting from the statute—was such as to make the debtor ineligible for Chapter 13 relief. In response, the debtor argued that the claim for treble damages under COLO.REV.STAT. § 18–4–405 was contingent because those damages have not been awarded by a court. The Bankruptcy Court concluded that, if all of the conditions leading to the award of treble damages have already occurred, then the award of those damages is not contingent and if the damages are readily ascertainable, they are liquidated.[44] The Court reasoned;

> The Court might be inclined to view the award of treble damages as contingent, and not a necessary component of the ... claims, if that award were discretionary with the trial court, but the Court does not read the language of COLO.REV.STAT. § 18–4–

405 as implying that an award of treble damages is discretionary. While it is true that the statute does not say that the *court shall* award treble damages, neither does it say that the *court may* award treble damages. Instead, it says that the "owner [of the stolen property] *may recover* ... three times the amount of the actual damages ..." **Because the language used speaks in terms of what the owner may recover as opposed to what the court may award, this Court does not believe that the statutory language supports the argument that discretion lies with the trial court to either award treble damages or not as it may deem appropriate.**[45]

Judge Tallman distinguished and refined his ruling in the subsequent *Salazar* case, where he concluded:

> The inclusion of [COLO.REV.STAT. § 18–4–405] treble damages claims in a § 109(e) chapter 13 eligibility determination was the narrow issue that this Court addressed in the case of *In re Krupka,* 317 B.R. 432 (Bankr.D.Colo. 2004). In that case, the Court noted that Colo.Rev.Stat. § 18–4–405 defines the crime of theft very broadly. *Id.* at 437. The creditors argued, and the Court agreed, that allegations that the debtor had misappropriated proceeds from the creditors' investments met the definition of theft applicable to the Colorado civil theft statute [46]

41. *See Itin v. Ungar,* 17 P.3d 129, 135 n. 9 (Colo.2000).

42. 317 B.R. 432 (Bankr.D.Colo.2004).

43. 348 B.R. 559 (Bankr.D.Colo.2006).

44. *Krupka,* 317 B.R. at 439.

45. *Id.* (italicized emphasis in original, bold emphasis added).

46. Judge Tallman refers to the "Colorado Civil Theft Statute" in this quote. The "Colorado Civil Theft Statute" is not so much a "term of art" as it is a term of common usage. The statute generally referred to as the "Colorado Civil Theft Statute" is COLO.REV.STAT. § 18–4–405. *See, e.g., Ziegler v. Inabata of America, Inc.,* 316 F.Supp.2d 908, 915 (D.Colo.2004) ("Civil theft is defined by the criminal code in section 18–4–405 ..."); *A–1 Auto Repair & Detail, Inc. v. Bilunas–Hardy,* 93 P.3d 598,

and that those claimants were entitled to treble damages under that statute. *Id.* at 439. Furthermore, the Court did not interpret the language of CoLo.Rev.Stat. § 18–4–405 as giving the trial court discretion on the question of whether to award treble damages or not. The Bankruptcy Code's definition of what constitutes a debt is broad and encompasses an award of treble damages imposed under CoLo. Rev.Stat. § 18–4–405. *See Cohen v. de la Cruz,* 523 U.S. 213, 218, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998) (Treble damages award under New Jersey Consumer Fraud Act were included in the nondischargeable debt under § 523(a)(2)).

In *Krupka* there was only a slight difference between the amounts reflect in the proofs of claim and the amounts acknowledged by Mr. Krupka to have been misappropriated. One of the three claims had been finally adjudicated and reduced to judgment, which included treble damages. In the two claims where a court had not already made a treble damage award, adversary actions were pending with respect to those claims. In both cases, discovery sanction orders had been entered that had the effect of establishing the amounts of the damages at issue. As a consequence, the Court was able to apply Colorado's Civil Theft Statute to those liquidated damage amounts. Here, by contrast, the Court finds none of the claims to contain liquidated damages amounts, therefore, it finds no liquidated damages to which it may apply CoLo.Rev.Stat. § 18–4–405.[47]

A cursory reading of Judge Tallman's opinions and the case law in Colorado, may lead one to conclude that, once a plaintiff has proven that a defendant has violated a statute that contains language, which provides that a violation of the statute constitutes "theft" under CoLo.Rev.Stat. § 18–4–401, plaintiff *automatically* is awarded treble damages, attorney fees and costs.[48]

This may well present a "due process" conundrum. There is a difference between determining qualification as a debtor under Chapter 13 of the Bankruptcy Code and assessing penalty damages under the Colorado Criminal Code. This Court has reviewed Sutherland Statutes and Statutory Construction for guidance with respect to the use of the word "shall" and "may" in the context of CoLo.Rev.Stat. § 18–4–405. The author of that treatise stated:

> Certain forms and types of statutes are generally considered mandatory. Unless the context otherwise indicates the use of the word "shall" (except in its future tense) indicates a mandatory intent. Even the permissive word "may" is interpreted as mandatory when the duty is imposed upon a public official and his act is for the benefit of the private individual.

> The directory character of a statute may likewise be indicated by its purpose and the manner in which its purpose is expressed. Thus, it has been said: "Where words are affirmative, and relate to the manner in which the power or jurisdiction vested in a public officer or body is to be exercised, and not to the limits of the power or jurisdiction itself, they may often have been construed as

---

604 (Colo.App.2004) (CoLo. Rev, Stat. § 18–4–405 provides independent civil remedies for theft); and *Chryar v. Wolf,* 21 P.3d 428, 431 (Colo.App.2000).

**47.** *Salazar,* 348 B.R. at 572.

**48.** *See, Itin v. Ungar,* 17 P.3d 129 (Colo.2000); *Ehrlich Feedlot, Inc., v. Oldenburg,* 140 P.3d 265 (Colo.App.2006); *A–1 Auto Repair & Detail, Inc. v. Bilunas–Hardy,* 93 P.3d 598 (Colo. App.2004).

directory; ..." Likewise, where the time, or manner of performing the action directed by the statute is not essential to its purpose, provisions in regard to time or method are generally interpreted as directory only.

. . .

Finally, it deserves to be noted that the difference between mandatory and directory, or between prohibitory and permissive, represent a continuum instead of separate, mutually exclusive characteristics. It has been said, for example, that because a statute has been classified for some purpose as directory does not mean that for all purposes it can be "ignored at will." [49]

The author of the treatise further notes that "[w]hen the exact meaning cannot be ascertained from the language of the statute, the court, in the search to determine the legislative intent, look to the words, context, subject matter, effects and consequences as well as to the spirit and purpose of the statute." [50] In *Krupka*, Judge Tallman made that search, and determined that, *in the context of determining whether a debtor was eligible to file for relief under Chapter 13 of the Bankruptcy Code*, the statutory language did not gave the trier of fact discretion to either award treble damages or not, [51]

The context in which Judge Tallman was ruling in *Krupka* and *Salazar* is key. Clearly, Judge Tallman *was addressing the question with respect to treble damages in the context of whether a debtor was eligible to file for relief under Chapter 13 of the Bankruptcy Code.* In other words, he was making a calculation based upon whether a debt was capable of being readily ascertained. [52] He was *not* addressing it in the context of actually trying an adversary proceeding and imposing treble damages. For this reason, this Court believes that a further analysis of the trier of fact's discretion, if any, is necessary.

### 4. The Discretion of the Trier of Fact COLO.REV.STAT. § 18–4–405

The Colorado Supreme Court,. in *Itin v. Ungar*, determined that:

placement [of COLO.REV.STAT. § 18–4–401] within the Criminal Code requires that the owner of the *property must prove that the taker or the defendant committed acts constituting at least one of the statutory crimes.* With respect to the crime of theft claimed here, *all of its statutory elements must be proved, including the two culpable mental states:* (1) that the *defendant knowingly obtained control* over the owner's property without authorization and (2) that *he or she did so with the specific intent to permanently deprive the owner* of the benefit of the property. *See* § 18–4–401. *Only upon proof of the criminal act of theft may the owner recover treble damages, fees, and costs.* [53]

The Colorado Supreme Court in *Itin* was addressing whether a victim seeking civil recovery of treble damages, costs, and fees under COLO.REV.STAT. § 18–4–405 needed to demonstrate that the defendant suffered a prior *conviction* for the crime of theft, robbery, or burglary. The Court concluded unequivocally that the prior *conviction* was not necessary, but instead, proof of the criminal act itself was necessary (in *Itin* the criminal act was conversion and breach of fiduciary duty as to the

---

**49.** 1A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 25:4 (6th ed.2006).

**50.** 3 NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 57:3.

**51.** 317 B.R. 432, 439 (Bankr.D.Colo.2004).

**52.** *Id.* 436.

**53.** 17 P.3d at 129 (emphasis added).

handling of escrow funds). Proof of *"knowingly obtain[ing] control ... without authorization"* and proof of *"specific intent to ... deprive the owner ...,"* was required to recover treble damages.

 This Court, thus, does not believe that, *as a trier of fact*, it is *without* discretion to determine whether treble damages should be awarded under the Colorado Criminal Code pursuant to Colo.Rev.Stat. § 18–4–405. By simple operation of Colo.Rev.Stat. § 38–26–109(4), it would appear that a person who violates the provisions of the Public Works Contractors' Trust Fund Statute commits "theft" within the meaning of Colo.Rev.Stat. § 18–4–401. But, such interpretation would seem inconsistent and discordant when considering *Itin* and the language of the statutory scheme set forth in Colo.Rev.Stat. § 18–4–401, *et seq.* When determining the intent of a statute, the Court must presume that "[a] just and reasonable result is intended." [54] The Colorado Supreme Court, in *Itin*, noted that the wording of Colo.Rev.Stat. § 18–4–401 seems to suggest that the General Assembly intended for the statute to require proof of the commission of a criminal act.[55] This Court agrees. Clearly, the Colorado legislature could have imposed a civil penalty. It did not. It imposed a criminal penalty under the Colorado Criminal Code.

Here, the Court concludes that not all the components of "theft" have been proven by the Plaintiff by a preponderance of the evidence. The evidence before this Court does not demonstrate that Defendant Varholdt (1) *intended to deprive* Plaintiff *"permanently* of the use or benefit of the thing of value" or of "its use or benefit" or (2) that he demanded "any consideration that he is not legally entitled

as a condition of restoring the thing of value to the other person." [56] The evidence before this Court demonstrates that Defendant Varholdt was managing a failing business and scrambling to survive. The Court concludes that the evidence presented demonstrates that Defendant Varholdt was desperate, not criminal. There is nothing to demonstrate that he *"intended"* to *"permanently"* deprive Plaintiff of the funds. Moreover, there was (and is) no demand of consideration as a condition of restoring the funds.

The Court concludes that there was a violation of the Public Works Contractors' Trust Fund Statute resulting in an award of actual damages. There was no proof, no evidence, no finding of conduct necessary to show criminal conduct or criminal liability under applicable Colorado case law. Thus, there is no justification for accessing the criminal penalty of treble damages, attorneys' fees and costs. Therefore, the Court, in its discretion as trier of fact, declines to award treble damages, attorneys' fees and costs.

**D. The Monetary Judgment Entered Hereby in Favor of the Plaintiff and Against Defendant Varholdt for Violation of the Colorado Contractor's Trust Fund Statute (The Public Works Contractors' Trust Fund Statute) Is Nondischargeable under 11 U.S.C. § 523(a)(4).**

 The existence of a fiduciary relationship under 11 U.S.C. § 523(a)(4) is determined under federal law.[57]

Under this circuit's federal bankruptcy case law, to find that a fiduciary relationship existed under § 523(a)(4), the

---

**54.** Colo.Rev.Stat. § 2–4–201(1)(c).

**55.** *Itin,* 17 P.3d at 133.

**56.** Colo.Rev.Stat. § 18–4–401(1)

**57.** *In re Young,* 91 F.3d 1367, 1371 (10th Cir.1996).

court must find that the money or property on which the debt at issue was based was entrusted to the debtor. Thus, an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4). Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties' knowledge or bargaining power is sufficient to establish a fiduciary relationship for purposes of dischargeability. "Further, the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy."[58]

■ In this case, the Court has held that the Defendant Varholdt has violated the Public Works Contractors' Trust Fund Statute, a technical trust imposed under the law. Consequently, a fiduciary relationship has been demonstrated for the purposes of 11 U.S.C. § 523(a)(4). Moreover, the testimony and evidence at trial demonstrates that a defalcation was committed by Defendant Varholdt in the course of the fiduciary relationship.[59]

Therefore, the Court concludes that judgment should enter in favor of Plaintiff and against Defendant Varholdt in the amount of $134,287.32, together with post-judgment interest on that amount at the statutory rate of 8% per annum from the date of the judgment until paid, plus attorneys' fees and costs.

## VI. *Order*

IT IS THEREFORE ORDERED that Judgment enters in favor of Plaintiff and against Defendant Varhotdt in the amount of $134,287.32, together with post-judg-

ment interest on that amount at the statutory rate of 8% per annum from the date of the judgment until paid. The judgment is nondischargeable under 11 U.S.C. § 523(a)(4).

---

58. *Id.*

59. The Tenth Circuit BAP concluded that:
 a finding of nondischargeability under section 523(a)(4) requires a showing of (1) the existence of a fiduciary relationship between the debtor and the objecting party, and (2) a defalcation committed by the debtor in the course of that fiduciary relationship.
 *Antlers Roof–Truss & Builders Supply v. Storie (In re Storie),* 216 B.R. 283, 286 (10th Cir. BAP 1997) (citing *Young,* 91 F.3d at 1371).